FRANCIS PRESCOTT & others *vs.* SECRETARY OF THE
COMMONWEALTH.

Suffolk. November 4, 1937. — January 17, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Constitutional Law*, Emergency law, Separation of powers of government. *Governor.* *Statute*, Emergency law. *Words*, "Emergency."

The questions, whether a statement, filed by the Governor with the Secretary of the Commonwealth and purporting under art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, II, to declare a certain law to be an emergency law, conformed to constitutional requirements, and what was the effect of the filing of such statement, were matters for judicial determination in a petition for a writ of mandamus to require the Secretary of the Commonwealth to act in disregard of the purport of such statement.
A statement under The Referendum, II, of art. 48 of the Amendments to the Constitution of the Commonwealth, filed by the Governor immediately upon the enactment of a statute and declaring it to be an emergency law, was not premature although the statute by its terms was to take effect six months later and no petition for a referendum under The Referendum, III, § 3, had been filed.
A statement by the Governor declaring St. 1937, c. 384, an emergency law complied in form with the requirements of The Referendum, II, of art. 48 of the Amendments to the Constitution by reciting in terms the declaration thereby made essential and stating as facts constitut-

ing the emergency that delayed operation of the law to its effective date would result in certain inconvenience to the public and to State, city, and town officials in the framing of their annual budgets.

The situation justifying action by the Governor in declaring a law an emergency law under The Referendum, II, of art. 48 of the Amendments to the Constitution is not merely one sought to be met by the law but may include one resulting from the passage of the law.

The result of a declaration by the Governor under The Referendum, II, of art. 48 of the Amendments to the Constitution that St. 1937, c. 384, was an emergency law, so far as its taking "effect without suspension" and thus preventing referendum proceedings was concerned, was not nullified by the facts that the statute by express terms was to take effect on a certain date and that the Governor in his statement of the reason for his opinion that an emergency existed referred to "delayed operation to the date set forth in the Act."

If it be assumed that action by the Governor in declaring a law an emergency law under The Referendum, II, of art. 48 of the Amendments to the Constitution is subject to judicial review with respect to the sufficiency of the facts set forth by him in his statement to constitute an emergency, such action cannot be held invalid unless, giving effect to every presumption in its favor, it is wholly without support in the facts set forth.

A declaration by the Governor under The Referendum, II, of art. 48 of the Amendments to the Constitution that St. 1937, c. 384, was an emergency law could not be said to be wholly without support in his statement of the facts constituting the emergency, that delayed operation of the law would result in certain inconvenience to the public and to State officials in the preparation of their budgets; the declaration was valid and resulted in the law taking "effect without suspension" so that it was not subject to referendum.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on July 6, 1937, for a writ of mandamus.

The case was reported to the full court by *Field*, J., without decision.

*R. S. Wilkins*, for the petitioners.

*J. J. Ronan*, Assistant Attorney General, for the respondent.

FIELD, J. This is a petition for a writ of mandamus. The petitioners are eleven citizens of the Commonwealth, taxpayers and duly qualified and registered voters in various cities and towns thereof. The respondent is the Secretary of the Commonwealth. St. 1937, c. 384, was approved by the Governor of the Commonwealth on May 28, 1937. Within thirty days thereafter the petitioners filed with the respondent a petition signed by them, asking for a refer-

endum on the law and requesting that the operation thereof be suspended for the purpose of obtaining a referendum thereon. See art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, III, § 3. Thereupon the respondent wrote to one of the petitioners a letter stating that the Attorney General had "ruled that the Act is in effect" and therefore "there is no authority under the constitution to request its suspension" and that he (the respondent) "refuse[s] to provide blanks for the use of subsequent signers." The respondent declined and continued to decline to provide such blanks. By the petition before us the petitioners seek a writ of mandamus compelling the respondent to provide such blanks and commanding him "to cease to regard said act as already in effect." The petition was heard by a single justice of this court upon the pleadings and an agreed statement of facts. The single justice found the facts to be as stated in the agreed statement of facts, and, at the request of the parties, reported, without decision, the questions of law arising in the case for the determination of the full court. See G. L. (Ter. Ed.) c. 211, § 6; c. 231, § 111; *Campbell* v. *Justices of the Superior Court*, 187 Mass. 509, 510.

The single justice states in the report that "So far as the matter is discretionary with me, I would not exercise my discretion against the issuance of the writ." He states also that "After the hearing before me was closed the parties reached an agreement whereunder the Attorney General has approved as proper a description of said Chapter 384 of the Acts of 1937, and the respondent has provided proper blanks to the petitioners so that the latter might endeavor to obtain the requisite number of signatures within the time prescribed. This agreement was reached without prejudice to the legal questions involved hereunder, and was entered into in order that the petitioners' rights would not lapse and the questions become moot."

St. 1937, c. 384, which was approved May 28, 1937, is entitled "An Act repealing the law providing for party primaries and pre-primary conventions of political parties, and reviving and continuing in force certain other laws,"

and reads as follows: "Section 1.   All provisions of chapter
three hundred and ten of the acts of nineteen hundred and
thirty-two, providing for party primaries and for pre-
primary conventions, and all other laws relative to such
primaries or to such conventions, or to both, are hereby
repealed.   All provisions of law which have been struck out
or amended by said chapter three hundred and ten or by
any other law relative to such primaries or conventions, or
both, are hereby revived as they existed immediately prior
to such striking out or amendment, subject, however, to all
subsequent amendments not relating to such primaries or
conventions, all of which subsequent amendments are hereby
continued in force.   Section 2.   This act shall take effect
upon December first in the current year."

No contention is made that St. 1937, c. 384, is not in its
nature the subject of a referendum petition (see art. 48 of
the Amendments to the Constitution of the Commonwealth,
The Referendum, III, §§ 1, 2), or that the petition filed with
the Secretary of the Commonwealth did not conform to the
requirements of The Referendum, III, § 3.   The Constitu-
tion in express terms imposes upon the Secretary the duty
of providing blanks for additional signatures and other
duties thereafter.   The Referendum, III, § 3.   There is no
contention that, unless by reason of the action of the Gover-
nor of the Commonwealth, hereinafter described, St. 1937,
c. 384, has taken effect without submission to the people,
there are not further duties to be performed by the Secre-
tary, that mandamus is not a proper remedy to compel the
performance of these duties, that this petition for a writ of
mandamus is not in form and substance adequate for the
purpose, or that the petitioners are not proper parties to
bring the petition.   See *Brooks* v. *Secretary of the Common-
wealth,* 257 Mass. 91, 92–94;   *Horton* v. *Attorney General,*
269 Mass. 503.   See also *Sullivan* v. *Secretary of the Common-
wealth,* 233 Mass. 543;   *Yont* v. *Secretary of the Commonwealth,*
275 Mass. 365;   *Christian* v. *Secretary of the Commonwealth,*
283 Mass. 98.

The question for determination, therefore, is whether St.
1937, c. 384, has taken effect so that the petition filed with

the Secretary under The Referendum, III, § 3, asking for a referendum thereon and requesting that the operation thereof be suspended, has become inoperative. There is no contention, however, that, though St. 1937, c. 384, provided expressly that it should take effect on December 1, 1937, the operation thereof was not suspended at least until the annual State election of 1938, unless, by reason of the action of the Governor hereinafter described, this law took effect without such suspension.

The Governor, purporting to act under the provisions of The Referendum, II, on May 28, 1937, filed with the respondent the following statement: ''The Commonwealth of Massachusetts, Executive Department, Boston, May 28, 1937. Honorable Frederic W. Cook, Secretary of the Commonwealth, State House. Sir: — I, Charles F. Hurley, by virtue of and in accordance with the provisions of the Forty-eighth Amendment to the Constitution, 'The Referendum II, Emergency Measures' do declare that in my opinion, the immediate preservation of the public peace, health, safety and convenience requires that the law passed on the twenty-eighth day of May, in the year nineteen hundred and thirty-seven, entitled 'An Act repealing the Law providing for Party Primaries and Pre-Primary Conventions of Political Parties, and Reviving and Continuing in Force Certain Other Laws' should take effect forthwith, that it is an emergency law, and that the facts constituting the emergency are as follows: Because its delayed operation to the date set forth in the Act will result in inconvenience to the public and to State, City and Town officials, acting on behalf of the public who in the process of their deliberations on and framing of their annual budgets must be certain as to the financial requirements for each budget item involving public expenditures for governmental activities. Very truly yours, Charles F. Hurley, Governor.''

Art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, II, as amended by art. 67 of such Amendments, is as follows: ''A law declared to be an emergency law shall contain a preamble setting forth the facts constituting the emergency, and shall contain

the statement that such law is necessary for the immediate preservation of the public peace, health, safety or convenience.  A separate vote, which shall be recorded, shall be taken on the preamble, and unless the preamble is adopted by two-thirds of the members of each House voting thereon, the law shall not be an emergency law.  Upon the request of two members of the Senate or of five members of the House of Representatives, the vote on the preamble in such branch shall be taken by call of the yeas and nays.  But if the governor, at any time before the election at which it is to be submitted to the people on referendum, files with the secretary of the commonwealth a statement declaring that in his opinion the immediate preservation of the public peace, health, safety or convenience requires that such law should take effect forthwith and that it is an emergency law and setting forth the facts constituting the emergency, then such law, if not previously suspended as hereinafter provided, shall take effect without suspension, or if such law had been so suspended such suspension shall thereupon terminate and such law shall thereupon take effect: but no grant of any franchise or amendment thereof, or renewal or extension thereof for more than one year shall be declared to be an emergency law."

1. The question whether the act of the Governor in filing with the Secretary the statement above quoted conformed to the constitutional requirements, and the question of the effect of his act in filing such statement, are matters for judicial determination.  "It is elementary in constitutional law under the Constitution of this Commonwealth that a duty is cast upon the judicial department of government, when the question is properly raised between litigants, to determine whether a public officer is overstepping constitutional bounds and whether statutes duly enacted conform to the fundamental law as expressed in the Constitution." *Horton* v. *Attorney General,* 269 Mass. 503, 507.  This principle applies to official acts of the Governor (*Commonwealth* v. *Fowler,* 10 Mass. 290, 301–302, *Tuttle* v. *Boston,* 215 Mass. 57), even though proceedings drawing them in question cannot be brought directly against him.  See *Rice*

v. *The Governor*, 207 Mass. 577. However, the scope of judicial review of an act of the Governor such as is here involved presents a further question.

2. The statement of the Governor did not fail to conform to constitutional requirements because of the time when it was filed. It was not filed prematurely. The provisions of The Referendum, II, that the Governor may file a statement "at any time before the election at which . . . [the law] is to be submitted to the people on referendum" and that upon the filing of such a statement "then such law, if not previously suspended as hereinafter provided, shall take effect without suspension," import that the Governor need not wait before filing a statement until the operation of the law has been suspended under the provisions of The Referendum, III, § 3, as the result of the completion of a petition for a referendum and for such suspension — or even until the original filing of such a petition.

3. The statement of the Governor complied, in form at least, with the requirements of The Referendum, II. It contained in terms the declarations thereby made essential. And it purported to set forth "the facts constituting the emergency." It is not open to the objection, held to be fatal in *Payne* v. *Graham*, 118 Maine, 251, under a somewhat similar constitutional provision, that only a conclusion and not facts are set forth — even if we assume in favor of the petitioners that this objection, if supported, would be fatal under The Referendum, II. The statement of the Governor sets forth as "facts" matters relating to the "deliberations on and framing of their annual budgets" by "State, City and Town officials," namely, that in the course thereof such officers "must be certain as to the financial requirements for each budget item involving public expenditures for governmental activities," and that inconvenience would result to such officers acting for the public, as well as to the public, from the delayed operation of St. 1937, c. 384. This statute, incorporated by reference in the statement, provides for substantial changes in a specific class of governmental activities. The statement purports to set forth a specific ground in fact requiring that this statute

take effect without delay and not merely a general conclusion that public convenience so requires.

4. The petitioners contend, however, that the emergency declared by the Governor was not the kind of emergency, within the meaning of the Constitution, with respect to which he was empowered to act. The argument in support of this contention is, in substance, that the emergency declared in the statement by the Governor was one created by the passage of the law and not one to be met by such a law, and that the Governor is empowered to act only in the case of an emergency of the latter type. But action by the Governor can be taken under The Referendum, II, only after a law has been passed. The question then to be decided by him is not whether such law shall be passed, but rather, whether, having been passed, it shall "take effect without suspension." This decision can be made by the Governor at any time after the passage of the law and before the election at which it is to be submitted to the people. It clearly was contemplated by The Referendum, II, that he should make his decision on the basis of the "facts" existing at the time he made it. See vol. II, Debates of the Constitutional Convention, 783–787, 948. *Yont* v. *Secretary of the Commonwealth*, 275 Mass. 365, 369; *Christian* v. *Secretary of the Commonwealth*, 283 Mass. 98, 103–105. The passage of the law and the situation created thereby are in the nature of "facts." Nothing in the Constitution indicates that such "facts" cannot be considered by the Governor in determining whether an emergency exists which must be met by putting the law into operation without delay. It cannot be said as matter of law that a situation resulting from delay in the operation of a statute which has been passed cannot create an emergency within the meaning of the Constitution which warrants action by the Governor under The Referendum, II.

5. A question argued at the bar is whether, in view of the provision of St. 1937, c. 384, that it shall take effect on December 1, 1937, the Governor had power under the Constitution to make it take effect before that date. If, however, the action of the Governor was adequate to make

this law "take effect without suspension" it is not material for the purposes of this case, so far as the record discloses, whether this law took effect at the time the statement was filed by the Governor with the Secretary or on December 1, 1937. And, also, if his action was not adequate to make this law "take effect without suspension," this question is immaterial. The question argued is material only in its bearing, if any, on the adequacy of the Governor's action to make the law "take effect without suspension" of its operation until a referendum thereon can be had. Clearly the Legislature by fixing December 1, 1937, as the time at which the law should take effect, could not deprive the Governor of his constitutional power to make it "take effect without suspension" or deprive him of his constitutional power, by action taken by him prior to December 1, 1937, to make this law "take effect without suspension," whatever may be the result of such action with respect to the time when the law takes effect "without suspension." The Governor did not purport by his statement to make the law take effect other than in accordance with constitutional provisions. Compare *Horton* v. *Attorney General*, 269 Mass. 503, 512–513. Even if the reference in the facts set forth by him to the law's "delayed operation to the date set forth in the Act" imports an attempt to make the statute take effect before that date, and if, as we do not decide, he had no power to do so, his action was not thereby vitiated if in all other respects it was adequate to make the law "take effect without suspension" within the meaning of the Constitution.

6. Fundamental contentions of the petitioners remain to be considered: (a) "that a declaration of emergency with statement of facts constituting the emergency will not be effective if, within the light of the court's judicial knowledge, the facts stated do not justify the conclusion that an emergency actually exists," and (b) "that the statement of facts filed by the Governor as a matter of law does not constitute an emergency justifying the application of the result provided in The Referendum, Part II, whereby the law will take effect without suspension." The respondent argues —

though in a somewhat broader form of statement — that neither of these contentions of the petitioner is sound.

As already pointed out, it is not true as a general proposition that an action of the Governor is not subject to judicial review in a proper case. But the narrower question here involved is whether his declaration, in the manner prescribed by the Constitution, that an emergency exists is subject to such review in the circumstances here shown. An "emergency" within the meaning of the constitutional provisions governing a referendum on a law is a situation where "the immediate preservation of the public peace, health, safety or convenience," in the case of a declaration of emergency by the Legislature, makes such law "necessary," or, in the case of a declaration of emergency by the Governor, "requires that such law should take effect forthwith." The Referendum, II. It is to be observed that necessities of "public . . . convenience," as well as those of "public peace, health, [or] safety" justify a declaration of an emergency. The constitutional convention had before it a bulletin of the commission to compile information and data for the use of the constitutional convention (see St. 1917, c. 28), wherein it was stated that "The definition of 'emergency measures' which has found widest acceptance is: 'measures immediately necessary for the preservation of the public peace, health or safety.'" Vol. I, Bulletins for the Constitutional Convention, 204. The use in The Referendum, II, in connection with a similar phrase, of the word "convenience" shows clearly a purpose that both the Legislature and the Governor should have power to declare an emergency though public peace, health or safety was not involved. Matters of "public . . . convenience," and the requirements for the preservation thereof, are in their nature preëminently matters for legislative determination or, if within the field of executive action, for executive determination. They are to a great extent matters of opinion. The reference to "public . . . convenience" in The Referendum, II, indicates that both the Legislature and the Governor are to have wide discretion in declaring the existence of an emergency. Moreover, in

the case of the Governor, the required statement of the necessity that the "law should take effect forthwith" is, by express constitutional provision, a statement of "his opinion" with respect thereto. Obviously it was not intended that the opinion of the court as to the existence of such a necessity should be substituted for the opinion of the Governor, acting within the scope of his powers. See *Dakota Central Telephone Co.* v. *State*, 250 U. S. 163, 184; *American Telephone & Telegraph Co.* v. *United States*, 299 U. S. 232, 236.

No other instance has come to our attention of a provision authorizing a Governor to declare a law an emergency law for the purpose of preventing a referendum thereon. But in numerous instances such authority has been given to the Legislature where the law is necessary for the immediate preservation of public peace, health or safety. In some cases arising under such constitutional provisions — which did not require that the facts constituting the emergency be set forth — it has been held that the declaration of an emergency is not the subject of judicial review with respect to the actual existence of an emergency. See *Orme* v. *Salt River Valley Water Users' Association*, 25 Ariz. 324, 347; *Van Kleeck* v. *Ramer*, 62 Colo. 4, 10–14; *State* v. *Kennedy*, 132 Ohio St. 510; *Oklahoma City* v. *Shields*, 22 Okla. 265, 300–306; *In re Menefee*, 22 Okla. 365, 375; *Kadderly* v. *Portland*, 44 Ore. 118, 146–151; *Roy* v. *Beveridge*, 125 Ore. 92. On the other hand, under like constitutional provisions, it has been held that the declaration of an emergency is subject to judicial review not only with respect to compliance with formal constitutional requirements, but also with respect to the actual existence of an emergency. See *State* v. *Sullivan*, 283 Mo. 546, 584–591; *State* v. *Becker*, 289 Mo. 660, 679–680; *State* v. *Stewart*, 57 Mont. 144; *Todd* v. *Tierney*, 38 N. M. 15, 47; *State* v. *Meath*, 84 Wash. 302, 318; *State* v. *Martin*, 173 Wash. 249, 257. Compare *State* v. *Whisman*, 36 S. D. 260, 264; *State* v. *Morrison*, 61 S. D. 344, 347. Some, at least, of the cases which recognize a right of judicial review with respect to the existence of an emergency recognize also that the scope of such review is

limited.  Thus in *State* v. *Martin*, 173 Wash. 249, 257, it is said that "We have always held to the rule that the legislative declaration of the facts constituting the emergency is conclusive, unless, giving effect to every presumption in its favor, the court can say that such legislative declaration, on its face, is obviously false and a palpable attempt at dissimulation."  In none of these cases, however, did the constitutional provision involved contain such a broad definition of emergency or such a clear indication that the declaration of an emergency is intended to be discretionary with the Legislature as is found in The Referendum, II, with reference to the Governor.

The power conferred on the Governor by The Referendum, II, to declare an emergency is, indeed, limited by the requirement that he set forth in his statement — as the Legislature is required to set forth in the preamble to a law declared by it to be an emergency law — the "facts constituting the emergency."  It may well be that failure to comply with this requirement would render a statement ineffective as a declaration of an emergency.  See *Jumper* v. *McCollum*, 179 Ark. 837, 840; *Payne* v. *Graham*, 118 Maine, 251.  See also *Mayor of Lowell* v. *Dadman*, 191 Mass. 370.  No such case is presented.  One purpose, at least, of this requirement is to place on record the grounds of the Governor's action for the information of the citizens to whom he is answerable.  See *Rice* v. *The Governor*, 207 Mass. 577, 580.  But this requirement does not purport to limit the field for the exercise of the power conferred on the Governor by The Referendum, II, nor the scope of his discretion within that field.  It may, however, have some tendency to show an intention that his action shall be subject to judicial review by providing a basis for such review on the face of his statement.  And, so far as judicial review may be had, the facts set forth exclude from consideration, as justifying the Governor's action, any emergency other than that upon which he relies as constituted by those facts.

In *Jumper* v. *McCollum*, 179 Ark. 837, 839–840, a case arising under a Constitution which provided that, where the Legislature declared an emergency, "It shall be necessary,

however, to state the fact which constitutes such emergency," the court said: "Of course, an emergency clause which did not state the fact constituting the emergency would not suffice; nor would a recited fact which was so obviously and demonstrably inefficacious to constitute an emergency that all fair-minded and reasonably intelligent men would say to the contrary." And in *Stanley* v. *Gates*, 179 Ark. 886, 898, arising under the same constitutional provision, the court said that the action of the Legislature "is supreme in declaring when an emergency exists; and if it states a fact or facts constituting the emergency so that its action cannot be said to be arbitrary, the courts cannot say to it that it has or has not performed its constitutional duty." See also *Hollister* v. *Kingsbury*, 129 Cal. App. 420, 425.

If we assume in favor of the petitioners that the action of the Governor is subject to judicial review with respect to the sufficiency of the facts set forth by him in his statement to constitute an emergency, such action cannot be held invalid unless, giving effect to every presumption in its favor, it is wholly without support in the facts set forth.

Applying this test we cannot say that the action of the Governor was invalid. The emergency declared by him is based on the necessities of public convenience — stated conversely, the public inconvenience which would result from the "delayed operation" of St. 1937, c. 384, "to the date set forth in the Act." The quoted phrase includes, even if it is not limited to, such "delayed operation" as gives opportunity for proceedings leading to a referendum on this law. The inconvenience set forth as a fact is that resulting from the uncertainty of "State, City and Town officials" in "their deliberations on and framing of their annual budgets" as to the provisions to be made therein for "public expenditures for governmental activities." Reference to the statute in question discloses that it would make substantial changes in the law relating to party primaries and party conventions, after December 1, 1937, if it should "take effect without suspension." The Governor's implied statement that such changes in governmental activities would affect the financial requirements

of the State, cities and towns to be provided for in their budgets for the ensuing year cannot rightly be challenged. It is supported by public laws of which judicial notice may be taken. *Lawrence Trust Co.* v. *Chase Securities Corp.* 292 Mass. 481, 482. See, for example, St. 1932, c. 310, §§ 5, 6; St. 1936, cc. 304, 432; G. L. (Ter. Ed.) c. 40, § 5; c. 53, § 29. Compare St. 1937, c. 435, which was not in effect when the Governor's statement was made.

Uncertainty whether St. 1937, c. 384 — making such changes in governmental activities and the financial requirements therefor — would take effect on December 1, 1937, or not until after the State election of 1938, would, if the statute was not declared to be an emergency law, necessarily continue until June 27, 1937, thirty days after the passage of the law, and might continue until August 26, 1937, ninety days after such passage. By G. L. (Ter. Ed.) c. 29, §§ 3, 4, officers and heads of departments of the Commonwealth are required to submit to the budget commissioner, on or before October 15, estimates in detail of expenditures of money to be made by them during the ensuing fiscal year, beginning on December 1 following. G. L. (Ter. Ed.) c. 4, § 7, Ninth. It is to be presumed that the Governor in declaring an emergency, based on such uncertainty and on the necessities of public convenience, acted in good faith, being honestly of the "opinion" which he expressed in his statement. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50. And — at least within limits — it is his "opinion" as to the sufficiency of the facts, set forth in his statement, to constitute an emergency which is controlling. We cannot say that his determination that an emergency existed was wholly without support in the facts set forth by him. In view of this conclusion relating to the preparation of the State budget it is not necessary to discuss the Governor's statement as it relates to the preparation of the budgets of the cities and towns.

Such cases as *Merrill* v. *Lowell*, 236 Mass. 463, *Safford* v. *Lowell*, 255 Mass. 220, and *Continental Construction Co.* v. *Lawrence*, 297 Mass. 513, relating to actions by city councils, are distinguishable. Indeed, in the case last cited, it

was said, page 915, that "There is no analogy whatever between the powers of a city council acting under statutory limitations and the power of the General Court to declare a law an emergency law under the express provisions of art. 48 of the Articles of Amendment of the Constitution."

*Petition dismissed.*