MAYOR OF GLOUCESTER *vs.* CITY CLERK OF GLOUCESTER
& others
(and a companion case[1]).

Essex.    May 11, 1951. — June 1, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Municipal Corporations,* City charter, Referendum. *Gloucester. Statute,*
Construction, Validity. *Public Officer.*

St. 1949, c. 661, read as a whole, including its title, discloses a legislative
objective to eliminate proportional representation from the Plan E
form of city government in favor of plurality voting in the case of all
cities voting to adopt that plan after the effective date of the statute,
and does not authorize such a city to adopt that plan with proportional
representation.

St. 1949, c. 661, is not void for vagueness and uncertainty notwithstand-
ing that in § 1 thereof, in repealing the proportional representation
feature of the Plan E form of city government, express reference was
made only to §§ 93 and 116 of G. L. (Ter. Ed.) c. 43, which do not
deal with proportional representation.

St. 1949, c. 661, was in effect on December 6, 1949, and nullified a referen-
dum vote on that date by the voters of the city of Gloucester purport-
ing to adopt the Plan E form of government with proportional repre-
sentation, notwithstanding the fact that many of the preliminary
steps to insure the referendum vote antedated the approval of c. 661.

An affirmative vote to adopt the Plan E form of government, returned at
a municipal election held in the city of Gloucester after the effective
date of St. 1949, c. 661, did not result in the adoption of Plan E with-
out proportional representation where the question submitted to the
voters on the ballot expressly referred to proportional representation
as a feature of Plan E.

A taxable inhabitants' petition against city officials to enjoin expendi-
tures for conducting a municipal election under the Plan E form of
government should be dismissed without prejudice upon a decision by
this court in a companion case that the election was not to be held
under Plan E but under the city charter previously in force: it was
not to be assumed that the respondent officials would not perform
their duties according to such decision.

[1] The companion case is by Michael J. Dailey and eleven others against
the city clerk, the mayor, and members of the city council of Gloucester.

BILL IN EQUITY, filed in the Superior Court on February 2, 1951, for a declaratory decree; also a

PETITION by taxable inhabitants, filed in the same court on February 5, 1951.

The cases were heard by *Forte*, J.

*I. I. Kline*, for the plaintiff and the petitioners.

*C. W. Monson*, City Solicitor, for the defendants and the respondents.

*R. J. Muldoon & A. E. Finger*, by leave of court, submitted a brief as amici curiae.

WILKINS, J.   The first case is a bill in equity brought by the mayor against the city clerk and members of the city council of Gloucester seeking a binding declaration as to whether the regular election this year should be held under the Plan E form of city government or under the charter of Gloucester contained in St. 1908, c. 611.   G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1.   The second case is a taxpayers' petition, under G. L. (Ter. Ed.) c. 40, § 53, to enjoin expenditures for conducting the election under Plan E.   The cases were heard upon statements of agreed facts and are reported without decision.   G. L. (Ter. Ed.) c. 231, § 111.

At the municipal election held in the city of Gloucester on December 6, 1949, there appeared upon the ballot the following question: "Shall Sections 93 through 116 of Chapter 43 of the General Laws providing for a new form of government to be established in the City of Gloucester, known as Plan E, being a form of city government and legislative body to be known as the City Council composed of seven or nine members, one of whom shall be elected as Mayor by and from such members and shall be the official head of the city and an administrative officer called the City Manager; the members of the City Council and the elective members of the School Committee to be elected at large by proportional representation; be adopted?"   The vote was "Yes" 5454 and "No" 2307.   The source of controversy is St. 1949, c. 661, approved August 9, 1949, and entitled, "An Act providing for the nomination of members

of the city council and the school committee of Plan E cities by preliminary elections, and providing for their election by ordinary plurality voting."[1] More specifically, the source of controversy is § 1 of that act.

Chapter 43 relates to all types of uniform city charters. It contains in all one hundred sixteen sections. The first forty-five sections are general provisions, § 2 providing that any city except Boston may adopt any of the plans. The remaining sections concern Plans A, B, C, D, and E. Those dealing with Plan E are §§ 93–116, and were added by amendment by St. 1938, c. 378, § 15. The distinguishing features of Plan E are a city manager and proportional representation in the city council and school committee. The city manager form of government was not new, and was contained in Plan D (§§ 79–92). Proportional representation was new and constituted a strikingly important change from conventional methods of electing by majority vote. *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303.

---

[1] The full text of the act is as follows: "SECTION 1. So much of the provisions of sections ninety-three and one hundred and sixteen of chapter forty-three of the General Laws as provides for the election by proportional representation of members of the city council and the school committee in cities having a Plan E form of city charter is hereby repealed.

"SECTION 1A. Notwithstanding the provisions of section one, in any city which has adopted the Plan E form of city charter, the provisions of law repealed by said section shall continue to apply until a referendum has been held in said city as provided in section three and a majority of the voters voting in answer to the question set forth in said section three vote in the affirmative.

"SECTION 2. Notwithstanding any provision of said chapter forty-three to the contrary, nominations of candidates for election to the city council and the school committee of cities having a Plan E form of city charter and in which the provisions of law repealed by section one no longer apply shall be made at preliminary elections under the provisions of sections forty-four A to forty-four G of said chapter forty-three, which sections are hereby made applicable in said cities, and the candidates nominated at such preliminary elections shall be candidates for election at the regular municipal election therein by ordinary plurality voting.

"SECTION 3. Upon petition of ten per cent of the registered voters of any city, which has adopted the Plan E form of city charter, filed with the state secretary not later than sixty days before any biennial state election, this act shall be submitted to the registered voters of said city at said election in the form of the following question, which shall be placed on the official ballot for use in said city at said election: — 'Shall an act passed by the General Court entitled "An Act providing for the nomination of members of the city council and the school committee of Plan E cities by preliminary elections, and providing for their election by ordinary plurality voting", be accepted?'"

Sections 93 and 116, the two sections mentioned by number in St. 1949, c. 661, § 1, do not deal with proportional representation.[1] That feature of Plan E is provided by § 115. Obviously, therefore, there is a gross error somewhere in c. 661. A careful reading of c. 661 as a whole, including its title, makes clear that the object of the legislation was the elimination of proportional representation as a feature of Plan E in favor of ordinary plurality voting in the case of all cities voting to adopt that plan after the effective date of the act. St. 1949, c. 661, §§ 1, 2. The effect of § 1A is to preserve proportional representation in a city which had previously adopted Plan E, at least until it should be abolished by referendum in the manner afforded by § 3. The reference in § 1 to "cities having a Plan E form of city charter," when read in connection with all the other provisions of the act, cannot be taken as an authorization to the city of Gloucester to proceed to the adoption of. Plan E with proportional representation.

The result is that St. 1949, c. 661, is not void for vagueness and uncertainty, but brought about the repeal of G. L. (Ter. Ed.) c. 43, § 115, inserted by St. 1938, c. 378, § 15, as a part of Plan E for all cities voting after c. 661 took effect. What consequences c. 661 may have upon other sections of G. L. (Ter. Ed.) c. 43, as amended,[2] we are not at present called upon to say. The curing of this anomalous situation rests exclusively within the legislative province.

In the cases at bar it is contended that St. 1949, c. 661, took effect on November 7, 1949, ninety days after approval of the act. G. L. (Ter. Ed.) c. 4, § 1. Art. 48 of the Amendments to the Constitution of Massachusetts, The Referendum, I; III, § 2. In the brief filed by the city solicitors of

---

[1] These sections are: "Section 93. The method of city government provided for in the following twenty-three sections shall be known as Plan E. Upon the adoption by a city of Plan E, it shall become operative as provided in sections one to forty-five, inclusive, except as otherwise provided by the following sections."

"Section 116. Except as otherwise provided in this chapter, all regular elections held under this plan shall be subject to all general laws relating to elections and corrupt practices, so far as applicable and not inconsistent with this chapter."

[2] See, for example, §§ 1, 8, and 31, as amended.

Somerville and Chelsea as amici curiae it is urged that the act took effect thirty days after such approval. In either event the act was in effect on the date of the Gloucester election. We are unaware of any facts affecting those cities which require a more precise ruling than is needed to dispose of the cases at bar. We hold that St. 1949, c. 661, was in effect on December 6, 1949.

It is further contended that St. 1949, c. 661, could not operate to affect the Gloucester election because many of the preliminary steps to ensure the referendum vote antedated the approval of that act. To this we cannot accede. No municipality has any vested right in its form of local government. All such matters are subject to the paramount authority of the Legislature, which may change, and even abolish, at will. *Coolidge* v. *Brookline,* 114 Mass. 592, 596. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 386. *Prince* v. *Crocker,* 166 Mass. 347, 369. *Boston, petitioner,* 221 Mass. 468, 477–478. *Sullivan* v. *Lawson,* 267 Mass. 438, 440. *Broadhurst* v. *Fall River,* 278 Mass. 167, 170–171. Unfortunate though it may be, the referendum vote of December 6, 1949, was a nullity. See *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191; *Cronin* v. *Secretary of the Commonwealth,* 299 Mass. 205.

There is one further argument to be considered. It is contended that, at the very least, the result of the vote on December 6, 1949, was the adoption of Plan E without proportional representation. This, however, cannot be. The form of the question submitted to the voters contained an express reference to that kind of representation. No one can rightly say that the voters would have approved Plan E in its present truncated form without that feature. The voters were entitled to rely upon the statement in the ballot prepared and given to them. See *Sears* v. *Treasurer & Receiver General, ante,* 310, 325–326.

We see no need for an injunction in the second case. It is not to be assumed that the respondents in that case, one of whom is the plaintiff and the others are defendants in the first case, and all of them public officials, will not carry out

their duties under the law. *Brookline* v. *Co-Ray Realty Co. Inc.* 326 Mass. 206, 214.

In the first case a final decree is to be entered adjudging that the election to be held in 1951 is to be under the charter contained in St. 1908, c. 611. In the second case a final decree is to be entered dismissing the petition without prejudice.

*So ordered.*