ETHEL M. TROLAND & others *vs.* CITY OF MALDEN.

Middlesex.    January 3, 1955. — March 4, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*School and School Committee. Municipal Corporations,* Referendum,
Municipal finance. *Malden. Equity Pleading and Practice,* Answer,
Appeal. *Words,* "Measure."

An item for "Instruction Personal Services" contained in an estimated
budget which the school committee of Malden voted to submit for
appropriation for the support of the public schools was a "measure"
within the definition of that word in St. 1950, c. 29, providing for a
referendum in that city. [355]
The remedy provided by G. L. (Ter. Ed.) c. 71, § 34, as appearing in St.
1939, c. 294, respecting deficiencies in appropriations for the support
of the public schools is not superseded in Malden by the referendum
provisions in St. 1950, c. 29, if they are not validly exercised. [355–356]
A referendum vote returned at a special election held in the city of Malden
pursuant to St. 1950, c. 29, disapproving an item for salaries in an
estimated budget which its school committee had voted to submit for
appropriation was invalid where it appeared that the referendum
petition and the question submitted to the voters at the election
stated the amount of such item as voted by the school committee to
be $1,260,084, whereas the amount in fact voted by the committee
was $7,142 less, or $1,252,942. [356]
Upon appeal from a final decree in a suit in equity in which the evidence
was reported and the trial judge made findings of material facts, this
court declined to consider the defence of laches argued by the re-
spondent where it was not set up in the answer, the trial judge made
no findings with respect thereto, and apparently the respondent raised
it for the first time in this court. [356–357]

PETITION, filed in the Superior Court on July 31, 1951.

A demurrer to the petition was overruled by *Forte,* J.,
and the case was heard on the merits by *Brogna,* J.

*Bernard Kaplan,* for the respondent, submitted a brief.

*A. Kenneth Carey, (John D. O'Reilly, Jr.,* with him,) for
the petitioners.

SPALDING, J.   This petition is brought under G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, by more than ten taxable inhabitants of the city of Malden to determine the amount of an alleged deficiency in the appropriation by the city for the support of its public schools for the year 1951; to obtain an order commanding the city and its officers, whose action may be necessary, to provide a sum of money equal to such deficiency together with a sum equal to twenty-five per cent thereof; and for a declaration under G. L. (Ter. Ed.) c. 231A, § 6, inserted by St. 1945, c. 582, § 1, that a referendum petition and the vote thereon on May 8, 1951, are of no legal effect.   The respondent's demurrer to the petition was overruled by an interlocutory decree.   Following a hearing on the merits, a final decree was entered which established a deficiency in the amount of $143,707 and ordered the city to provide this sum together with the further sum of $35,926.75 by borrowing as provided in G. L. (Ter. Ed.) c. 71, § 34.   The decree also adjudged that the referendum vote of May 8, 1951, was of no legal effect.   From the interlocutory decree overruling the demurrer and from the final decree, the respondent appealed. The evidence is reported and the judge made findings of material facts.

The facts are these:   On December 29, 1950, the school committee of the city of Malden voted to submit to the mayor its estimate of the amount deemed necessary by it for the support of the schools for the year 1951.   The amount estimated was $1,666,213.   This amount was made up of nine items but the only one in dispute was that entitled "Instruction" which embraces "Personal Services" and "Maintenance."   The amount estimated and requested for "Instruction" was $1,320,192 of which $1,252,942 was for "Personal Services." [1]   The present controversy has to do

---

[1] Actually the sum of $1,252,942 was for salaries which had been established by the school committee.   Prior to 1950 annual step-up increases for teachers had been fixed at $120, and increases for principals, supervisors, and directors had been fixed at $150.   By a vote of December 8, 1950, these increases were raised to and established at $180 and $225 respectively.

only with that part of the "Instruction" estimate which relates to "Personal Services." On January 5, 1951, the estimate was transmitted to the mayor who refused to include that amount in the budget for 1951, and pursuant to St. 1950, c. 29, presented to the school committee a petition signed by more than the required number of registered voters protesting the estimate. The petition read as follows: "Whereas, the School Committee of the City of Malden voted on December 29, 1950 to requisition the City of Malden to appropriate in its annual budget in 1951 the sum of $1,666,213.00, for school salaries and other school purposes, and whereas, the said requisition contained an item 'Instruction, Personal Services $1,260,084.00' and whereas, said item is $155,549.00 more than was appropriated by the City for the same purpose in 1950, Therefore, we the undersigned registered voters of the City of Malden do hereby protest against that part of the requisition containing said item of 'Instruction, Personal Services $1,260,-084.00' from taking effect, and respectfully request the School Committee to reconsider the above item, and rescind the same, and if not, that the same be submitted to a vote of the registered voters of the City."

At a special meeting of the school committee on February 8, 1951, the committee voted "To rescind the amount of $1,252,942 which is the correct amount voted by the School Committee for Instruction Personal Services for the 1951 budget, instead of $1,260,084 referred to in the referendum petition; and the . . . Committee substitutes therefor the sum of $1,248,242 for Instruction Personal Services for 1951, making a total budget for the School Department for the year 1951 of $1,661,513."

Pursuant to St. 1950, c. 29, a special election was held on May 8, 1951, to vote on the question "Shall that part of the vote of the School Committee taken on 12/29/50 requesting the City to appropriate $1,260,084.00 for 'Instruction — Personal Service' (said item being $155,549.00 more than was appropriated by the City for the same purposes

in 1950) be Approved?" The result of the vote was that this item be disapproved, 5,924 voting "yes" and 7,402 voting "no."

The judge found that the school committee "did not request the city to appropriate $1,260,084 for Instruction — Personal Service" and that that figure was not the amount included in its vote of either December 29 or February 8. He ruled that the referendum of May 8 was of no legal effect.

It is not disputed — and the judge found — that the amount appropriated by the city for "Instruction Personal Services" for 1951 was $1,104,535 and that this was $143,707 less than the amount estimated and requested by the school committee after its deduction of $4,700 by its vote on February 8.

The demurrer contains several grounds but the only one now relied on is that in view of St. 1950, c. 29, amending the city's charter (St. 1881, c. 169) the petitioners have no right to invoke the remedy provided by c. 71, § 34. The pertinent provisions of St. 1950, c. 29, are: "If, within twenty days after the final passage of any measure, except a revenue loan order, by the city council or by the school committee, a petition signed by registered voters of the city, equal in number to at least twelve per cent of the total number of registered voters, is presented to the city council or to the school committee, as the case may be, protesting against such measure, or any part thereof, taking effect, the same shall thereupon and thereby be suspended from taking effect; and the city council or the school committee, as the case may be, shall immediately reconsider such measure or part thereof; and if such measure or part thereof is not entirely rescinded, the city council shall submit the same, by the method herein provided, to a vote of the registered voters of the city, either at the next regular city election, or at a special election which may, in its discretion, be called for the purpose, and such measure or part thereof shall forthwith become null and void unless a majority of the registered voters voting on the same at such election vote in favor thereof."

Doubtless the challenged item for "Instruction Personal Services" contained in the estimate voted by the school committee was a "measure" as that word is defined in the statute. Elsewhere in c. 29 it is provided that "'measure' shall mean an ordinance, resolution, order or vote passed by a city council, or a resolution, order or vote passed by a school committee, as the case may be." Since it will not affect the result we need not decide whether the vote was an exercise of the committee's legislative function as distinct from its executive function. We assume in favor of the respondent that the vote was legislative in nature and thus subject to the referendum provisions of c. 29. See *Gorman* v. *Peabody*, 312 Mass. 560. But it is not true, as the respondent urges, that c. 29 entirely supersedes the remedy provided by G. L. (Ter. Ed.) c. 71, § 34. In *Gorman* v. *Peabody*, 312 Mass. 560, where a charter provision similar to c. 29 was under consideration, it was said at page 570, "The statutory provisions as to the powers and duties of school committees, which are of long standing, are to some extent, at least, by the charter provisions for the referendum, made subject to the orderly expression of the will of the registered voters, in so far as a 'measure' finally passed by the school committee is concerned." But that does not mean that the remedy provided by G. L. (Ter. Ed.) c. 71, § 34, was not available in situations where the referendum was of no legal effect. Nothing to the contrary was said in *Casey* v. *Everett*, 330 Mass. 220, 225, cited by the respondent. The petition alleges that the referendum vote of May 8, 1951, was of no legal effect because the challenged vote of the school committee which was submitted to the voters for their approval was not the vote which had been passed by the committee. If this was true — and upon demurrer it must be deemed to be — then the petition could be maintained under G. L. (Ter. Ed.) c. 71, § 34. It could not have been the intent of the Legislature to deprive the inhabitants of a city or town of their remedy under § 34 in situations where the referendum procedure was not validly exercised; otherwise they would be without any effective

remedy. We hold, then, that the remedy provided in § 34 is superseded by referendum provisions of the sort here involved only if they are validly exercised. The demurrer was rightly overruled.

We now turn to the merits. We are of opinion that the allegations contained in the petition with respect to the invalidity of the referendum vote were sustained and that the judge rightly ruled that the vote was of no legal effect. As pointed out above, the vote of the school committee which the referendum petition attempted to challenge was the item of $1,252,942 for "Instruction Personal Services." But the referendum petition stated that the committee had voted $1,260,084 for that purpose. And the question submitted to the voters on May 8, 1951, likewise stated that the committee had voted that amount. Thus the voters were called upon to approve or disapprove a purported vote of the committee which exceeded by $7,142 what the committee had in fact voted. We cannot say that this was immaterial. Under c. 29 the measure or part thereof which is the subject of the referendum vote "shall forthwith become null and void unless a majority of the registered voters voting on the same at such election vote in favor thereof." But that provision does not apply in a situation where, as here, the measure which the voters pass upon is different from that which the school committee has in fact passed. The voters are entitled to know what they are voting on and if the question is misleading or contains inaccuracies of substance the referendum vote is invalid. *Mayor of Gloucester* v. *City Clerk of Gloucester*, 327 Mass. 460, 464. Since the referendum vote was invalid the provision of the statute that the measure should become null and void unless approved by a majority of the voters never became operative.

Finally the respondent argues that the petitioners were guilty of laches. But this defence was not set up in the answer and hence cannot be relied on as matter of right. *Adamowicz* v. *Iwanicki*, 286 Mass. 453, 458. There are no findings by the trial judge on this issue and it would appear

that the respondent is raising the question here for the first time. We are of opinion that in these circumstances it is in no position to raise the question.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs*
*of this appeal.*