JAMES J. CLARK ET AL. *v*. ELIZABETH V. GIBBS ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued February 4—decision released June 16, 1981

*Hans C. F. Wriedt,* for the appellants (plaintiffs).

*Dominick J. Rutigliano,* assistant corporation counsel, with whom, on the brief, were *Walter Marcus,* corporation counsel, and *David M. Astrove,* for the appellees (defendants).

ARTHUR H. HEALEY, J.   The plaintiffs are residents, taxpayers and qualified voters in the city of Norwalk, including its fifth taxing district.[1]   The defendants are Elizabeth V. Gibbs and Mary O.

---

[1] The city of Norwalk, which was consolidated by the state legislature in 1913, is presently comprised of seven taxing districts. The first, second, third, fifth and sixth taxing districts represent certain geographical portions of the city with the fifth taxing district comprising the entire city. Each of these districts are separately chartered with certain municipal functions that were reserved to it by the charters of 1913 and 1915 as amended by subsequent special acts.   For example, the first and second districts each have their own water department and the second district also has its own electric generating plant.   The fourth district represents that portion of the fifth district which receives the city sewer and city garbage collection services.   The seventh district is that part of the sixth district which receives city sewer service.

Keegan who are the city clerk and town clerk, respectively, of the city of Norwalk. On April 7, 1980, the Norwalk board of estimate and taxation approved an operating budget for that city for the 1980–81 fiscal year, and set the mill rate for all seven taxing districts[2] in the city. This action of the board was subject to referendum under article XXIII of the Norwalk charter.[3] On April 17, 1980, the plaintiffs filed with the defendant Gibbs a notarized statement which the parties and the trial court[4] have treated throughout as a request for the issuance of forms of petition for a referendum, under article XXIII, § 1-669-2.[5] This written request set forth the precise wording of the question which the plaintiffs wanted presented to the

---

[2] Each district has its own mill rate. The mill rate that is used to determine an individual citizen's tax rate depends on where he resides within the city and what services he receives from which district.

The mill rate for the fifth taxing district is used in the computation of the taxes for every citizen of Norwalk and comprises the largest portion of an individual's tax bill.

[3] Article XXIII, § 1-669 of the Norwalk charter, entitled "Matters subject to referendum; procedure," provides:

"Any provision of the Charter of the City of Norwalk to the contrary notwithstanding, every ordinance hereinafter enacted and every exercise of authority of the Common Council and the Board of Estimate and Taxation, except as otherwise provided by the Acts of the General Assembly or Constitution of the State of Connecticut, shall be subject to referendum as set out herein."

[4] The trial court found that "[s]aid written request, while not in ideal form, was sufficient to prompt the City Clerk to accept it for the purpose for which it was intended and she thereupon commenced the process of preparing the forms of petition."

[5] Article XXIII, § 1-669-2 of the Norwalk charter provides:

"No ordinance or other exercise of authority shall be subject to referendum unless within ten (10) days of the time that the ordinance is passed or exercise of authority which is sought to be submitted to referendum is taken a written request filed by at least five (5) electors of the city, duly notarized, for the issuance of forms of petition for referendum is filed with the City Clerk, together with a fee of twenty-five dollars ($25)."

electors of Norwalk and placed both on the form of petition for the referendum and on the referendum ballot itself, in the event that sufficient signatures were obtained to submit the question to a referendum.[6] The defendant Gibbs prepared and made available to the plaintiffs on April 18, 1980, forms of petition for referendum. These forms of petition, however, did not state the question in the precise wording requested by the plaintiffs. Rather, the forms articulated it to conform to the manner set out in article XXIII, § 1-669-5.[7] On April 23, 1980, after receipt of the petition forms prepared by Gibbs, the plaintiffs wrote to her complaining that these forms did not contain the wording which they had originally requested, and asked for the preparation of forms which did set out the requested wording. On April 25, 1980, Gibbs wrote to the plaintiffs and informed them that the petitions "you received are valid and you may proceed to have them filed." Her letter also stated: "As to

[6] The precise wording set out in the plaintiffs' request was: "The undersigned electors of the city of Norwalk herby [sic] require that Norwalk's 1980–81 operating budget, as approved by the board of estimate and taxation, be rescinded. And, that there be no increase in the operating budget, assessment and mill rate of the fifth taxing district over the 1979–80 operating budget, with the exception of revenues coming from growth in the Oct. 1, 1979 grand list or other outside sources."

[7] The forms of petition prepared by the defendant Gibbs and made available to the plaintiffs stated the question as follows: "The undersigned electors of the City of Norwalk hereby request that the action request that the action [sic] of the Norwalk Board of Estimate and Taxation taken on April 7, 1980, in making appropriations and levying taxes for the Operating Budgets for the fiscal year 1980–1981, be disapproved by means of a referendum election to be held thereon."

the wording of the petition, I have no authority to include the wording you requested in the petition."[8]

The plaintiffs did not circulate for signatures the petition forms received from Gibbs, but, on May 8, 1980, they instituted this action. In their complaint, the plaintiffs alleged, inter alia, that the conduct of the defendant Gibbs unlawfully prevented them from presenting to the Norwalk electors the issue they sought to submit to referendum. They also claimed that her conduct violated their civil rights and their rights under the United States and Connecticut constitutions. Essentially, the plaintiffs sought: (1) injunctive relief and/or an order in the nature of a mandamus against the defendant Gibbs directing her to prepare forms of petition for referendum setting out the question in the precise wording they requested; and, (2) if such relief were granted, injunctive relief and/or such other appropriate order to suspend the time limitations imposed by the Norwalk charter on referendum procedure to collect and return "proper forms of petition," as well as providing appropriately thereafter for subsequent time strictures under the charter; and (3) other injunctive relief directing the defendants Gibbs and Keegan to take all appropriate action to effectuate any court orders entered. After a hearing, the trial court denied any relief to the plaintiffs and this appeal followed.

---

[8] Gibbs' letter of April 25, 1980, also informed the plaintiffs that the typographical error in the petition forms given to them did not alter the meaning of the petition, that the forms "are acceptable for public distribution and the time table for the referendum is in no way altered by the typographical error." The trial judge found that the typographical error was "insignificant."

On appeal, the plaintiffs claim that the trial court erred in ruling that: (1) no duty was imposed on the defendant Gibbs as city clerk to adopt the specific language·requested by the plaintiffs in their request for petitions for referendum; (2) the defendant Gibbs as city clerk properly performed her legal duty to issue forms of petition for referendum in accordance with the Norwalk charter; (3) the plaintiffs were not entitled to an order in the nature of a mandamus or to the injunctive relief sought; and (4) the plaintiffs were not deprived of their constitutional rights.

We take up the plaintiffs' first two claims together since they are closely intertwined.[9] The court decided that no duty was imposed on Gibbs, under either the Norwalk charter or the appropri-

[9] The defendants suggest that this appeal should be dismissed for two reasons: (1) the plaintiffs are not appealing from a final judgment; and (2) the case has become moot. We do not agree with either of these contentions. The plaintiffs in this case sought an order in the nature of a mandamus, and a temporary and permanent injunction. At the hearing, the defendants stipulated to certain facts, admitted certain paragraphs of the complaint and contested other paragraphs. After evidence was heard, the court rendered judgment refusing to grant any relief in the nature of mandamus or any of the requested injunctive relief. We agree with the plaintiffs that the court's ruling was a final adjudication of all of their claims. Such a judgment is final and is appealable since the rights of the parties are concluded so that further proceedings cannot affect them. See *E. J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 627, 356 A.2d 893 (1975); *Kerite Co.* v. *Alpha Employment Agency, Inc.*, 166 Conn. 432, 436, 352 A.2d 288 (1974); *Howarth* v. *Northcott*, 152 Conn. 460, 462, 208 A.2d 540 (1965).

With regard to the mootness claim, we have stated that a case is not moot if it presents a situation "capable of repetition, yet evading review." *CEUI* v. *CSEA*, 183 Conn. 235, 249–50, 439 A.2d 321 (1981); *Rosnick* v. *Zoning Commission*, 172 Conn. 306, 309, 374 A.2d 245 (1977); *Taylor* v. *Robinson*, 171 Conn. 691, 694, 372 A.2d 102 (1976). This case presents us with such a situation as the plaintiffs indicated that they intend in the future to seek a referendum of the nature involved in this appeal.

ate General Statutes, to adopt the specific language requested by the plaintiffs in their request for referendum. The court determined that the duty imposed on her as city clerk was to prepare and issue forms of petition in accordance with the provisions of the Norwalk charter and the appropriate Connecticut General Statutes. This duty, the trial court held, she properly and fully performed. We agree with these conclusions. Accordingly, we do not accept the plaintiffs' claims that Gibbs was under a duty "to process [the] plaintiffs' request as submitted," and that she had no discretion to reject such a form of petition.

Initially, we note that the plaintiffs point to no provision of the Norwalk charter or the state statutes which mandates that the defendant city clerk set out the question in the precise language submitted by them. There is merit to the trial court's observation that to impose such an obligation upon the city clerk would invite serious misuse of the referendum process making possible the placement of questions on petition forms that could be "outlandlish and impractical."

More importantly, we note that article XXIII, § 1-669-5 of the charter provides a form for the clerk to follow in framing questions on the form of petition. That section states in pertinent part: "The form of petition to be prepared by the City Clerk shall be *substantially* as follows: The undersigned electors of the City of Norwalk hereby request that the (ordinance, capital appropriation, resolution, etc.) of the (Common Council, Board of Estimate and Taxation) be disapproved by means of a referendum election to be held thereon." (Emphasis added.) We agree with the trial court's

conclusion that the word "substantially"[10] confers upon the city clerk the discretion[11] to frame a proposition or question in words sufficiently clear to present to the electors the basic issue intended.[12]

The plaintiffs further argue that the petition forms prepared by Gibbs were improper since they did not fairly and accurately present the issue.

[10] Webster, Third New International Dictionary, defines "substantially" as meaning "in a substantial manner" and it defines "substantial" to mean "consisting of, relating to, sharing the nature of, or constituting substance; being of moment, important, essential."

[11] We point out that under General Statutes § 7-9, "[w]henever under the provisions of the General Statutes or any special act, any action for a vote by the electors or voters of a municipality is to be initiated by the petition of such electors or voters, in addition to such other requirements as such statute or special act may impose, *such petition shall be in a form prescribed or approved by the clerk of such municipality . . . ."* (Emphasis added.)
In addition, General Statutes § 9-369, which concerns the procedure for holding a referendum by either the state or municipality, contains no language requiring the "amendment, question or proposal" to be voted upon to be in any precise language.

[12] The soundness of article XXIII, § 1-669-5, in providing a form and in allowing the city clerk discretion in phrasing the presented question instead of requiring her to adopt verbatim the words presented, is aptly illustrated by the present case. The language used by the plaintiffs in their request stated that the undersigned electors *"require* that Norwalk's 1980–81 operating budget, as approved by the board of estimate and taxation, *be rescinded."* (Emphasis added.) The rigidity of this language in virtually dictating such a mandate to the board does not comport with the proper function of a referendum, which, under the Norwalk charter, is merely advisory, and not mandatory, on the board. See article XXIII, § 1-669-11 (where "a referendum is held and the appropriations submitted to the electorate in the referendum is disapproved, then within three (3) days after said election the Board of Estimate and Taxation shall hold a public hearing on said appropriations and shall make such alterations or adjustments and shall adjust the tax rate to correspond to such changes, if any, as it may deem proper to reflect the views of the electors.") In this respect, if the precise wording of the plaintiffs' request were to be adopted, not only would it be inconsistent with § 1-669-11 of the Norwalk charter, but it would also be misleading to the Norwalk electorate.

They contend that while the form suggested by the charter might be appropriate for a referendum on a specific ordinance or resolution where a vote of disapproval can only mean one thing, the form is inappropriate on a referendum on budget appropriations where a disapproval vote can mean more than one thing, i.e., that the budget appropriations are either too high or too low.

The trial court held that the wording of the question, as prepared by Gibbs, clearly presented to the electors the basic issue intended: the approval or disapproval of the operating budget for the 1980–81 fiscal year. We agree. It has been held that "[t]he voters are entitled to know what they are voting on and if the question is misleading or contains inaccuracies of substance the referendum is invalid." *Troland* v. *Malden,* 332 Mass. 351, 356, 125 N.E.2d 134 (1955); see *Mayor of Gloucester* v. *City Clerk of Gloucester,* 327 Mass. 460, 464, 99 N.E.2d 452 (1951). The forms of petition prepared by the defendant were not misleading or inaccurate. The claim that the board, if the referendum were approved, would not know whether the voters sought a higher or lower budget dismisses the fiscal and political realities of a referendum seeking to disapprove a city's budget appropriations for a fiscal year.[13] We conclude that the wording prepared by Gibbs was not improper, inaccurate, or misleading, and that Gibbs fully performed her duty under the Norwalk charter.

---

[13] We note that the Norwalk charter provides for a public hearing, within three days following the disapproval of the board's action by referendum, at which time the public may address itself to the specific areas of the budget it desires the board to correct. See Norwalk charter, Article XXIII, § 1-669-11.

From the foregoing discussion, it is obvious that the court did not err in refusing to grant either a mandamus or injunctive relief. Mandamus does not lie where the public official or public agency involved is authorized to exercise a discretionary power. See *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981); *Kiszkiel* v. *Gwiazda,* 174 Conn. 176, 179–80, 383 A.2d 1348 (1978); *Tremblay* v. *Connecticut State Employees' Retirement Commission,* 170 Conn. 410, 415–16, 365 A.2d 1125 (1976); *Light* v. *Board of Education,* 170 Conn. 35, 37–38, 364 A.2d 229 (1975); *Raslavsky* v. *Moore,* 167 Conn. 363, 367, 355 A.2d 272 (1974). " ' "The writ of mandamus is designed to enforce a plain positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate remedy" ' . . . . Consequently, a writ of mandamus will lie only to direct performance of a ministerial act which requires no exercise of a public officer's judgment or discretion." (Citations omitted.) *Kiszkiel* v. *Gwiazda,* supra, 179–80. Furthermore, where a public officer acts within the scope of delegated authority and honestly exercises her judgment in performing her function, mandamus is not available to review the action or to compel a different course of action. See *Hannifan* v. *Sachs,* 150 Conn. 162, 167, 187 A.2d 253 (1962). The defendant Gibbs, in exercising her discretion, did so properly in framing the question in terms sufficiently clear to present it to the electors in meaningful language.

The court also was correct in refusing to grant injunctive relief. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to

the granting of an injunction. *Stocker* v. *Waterbury,* 154 Conn. 446, 449, 226 A.2d 514 (1967); *Theurkauf* v. *Miller,* 153 Conn. 159, 161, 214 A.2d 834 (1965); *Stapleton* v. *Lombardo,* 151 Conn. 414, 416, 198 A.2d 697 (1964)." *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978). Since we uphold the court's conclusions that the plaintiffs were not harmed, we find no error on this ground.

Finally, the plaintiffs appear to claim that the actions of the defendants deprived them of their constitutional right to petition.[14] They failed to raise this claim either in their initial brief filed in this court, or in oral argument before us. Rather, they presented this claim, in a summary fashion, in their reply brief. Even if we were to hold that this issue is properly before us, we find no merit to their contention. The referendum vehicle was fully accessible to them, and the process was made available to them by the issuance of the proper forms of petition by the city clerk, who performed her duty in full compliance with the Norwalk charter.

There is no error.

In this opinion the other judges concurred.

---

[14] In their complaint, the plaintiffs alleged that they had been deprived of their right to petition granted by the first amendment to the United States constitution and article first § 14 of the Connecticut constitution.