WILLIAM H. J. FITZGERALD *vs.* SELECTMEN OF BRAINTREE & others.

Norfolk. January 8, 1937. — January 18, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Constitutional Law*, Control of municipalities, Limited town meeting form of government. *Municipal Corporations*, Limited town meeting form of government, Town meeting. *Statute*, Acceptance by municipality. *Braintree.*

A vote of a town authorizing a petition to the General Court for an act enabling the town to adopt a limited town meeting form of government does not constitute the inhabitants' "consent" within art. 70 of the Amendments to the Constitution of the Commonwealth, to the establishment of that form by a statute afterwards enacted.

A vote at a town meeting of the town of Braintree purporting to accept St. 1936, c. 56, providing for a limited town meeting form of government, when there was nothing in the warrant for the meeting respecting the question of acceptance, did not meet the requirements of art. 70 of the Amendments to the Constitution of the Commonwealth and was void, although § 12 of said c. 56 contained a direction that that question should be voted upon at that meeting "notwithstanding the closing of the warrant" therefor.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Norfolk on December 31, 1936.

The truth of the averments of the petition being admitted by the answer, the case was reported, without decision, by *Lummus*, J., for determination by the full court.

*J. W. French*, for the petitioner.

*R. A. Hunt*, for the respondents.

RUGG, C.J.  This petition for a writ of mandamus is brought by a citizen and voter of Braintree to prevent the selectmen and other officers of that town from carrying out the provisions of St. 1936, c. 56. *Brewster* v. *Sherman*, 195 Mass. 222.  The issue to be decided is whether that statute has become operative in conformity to art. 70 of the Amendments to the Constitution.  The pertinent facts in that connection are these: At the annual meeting of the town of Braintree it was voted on April 11, 1932, that a committee of five be appointed by the moderator "to petition the legislature for an act enabling the Town to adopt" the limited town meeting form of government.  The committee was appointed and petitioned the General Court in 1936 with an accompanying bill for the passage of legislation to establish in the town of Braintree a form of representative town government by limited town meetings. Pursuant to that petition, said c. 56 was enacted and approved on February 17, 1936.  Section 12 of that chapter is as follows: "This act shall be submitted to the registered voters of the town of Braintree for acceptance at its annual town election in the year nineteen hundred and thirty-six notwithstanding the closing of the warrant for said annual election.  The vote shall be taken by ballot in accordance with the provisions of the general laws so far as the same may be applicable in answer to the question which shall be placed upon the official ballot to be used in the several precincts for the election of town officers at said election: — 'Shall an act passed by the general court in the year one thousand nine hundred and thirty-six entitled "An act establishing in the town of Braintree representative town government by limited town meetings", be accepted by this town?'  If accepted by a majority of the voters voting thereon this act shall thereupon take effect for all purposes incidental to the annual town election in said town in the year nineteen hundred and thirty-seven, and shall take full effect beginning with said election."

Prior to February 17, 1936, the town meeting warrant for the annual town election in Braintree for 1936, to be held on March 2, had in fact closed and nothing appeared

in that warrant in any way warning or informing the inhabitants of the town that the question set forth in said § 12 would appear on the ballot. The question was printed on the official ballot for the election at that meeting. The committee appointed pursuant to the vote of April 11, 1932, caused to be published on February 21 and February 28, 1936, in two successive issues of a newspaper printed in Braintree, a notice over their names directing the attention of the voters of Braintree to the fact that the question of the acceptance of said c. 56 would appear upon the ballot at the annual town election for 1936. The official count of the ballots taken on that question was "Yes" 2,157, "No" 1,106, and "blanks" 2,675. It was provided by art. 2 of the Amendments to the Constitution, approved and ratified in 1821, empowering the General Court "to erect and constitute municipal or city governments, in any corporate town or towns in this commonwealth," that "no such government shall be erected or constituted in any town not containing twelve thousand inhabitants, nor unless it be with the consent, and on the application of a majority of the inhabitants of such town, present and voting thereon, pursuant to a vote at a meeting duly warned and holden for that purpose. And provided also, that all by-laws made by such municipal or city government, shall be subject, at all times to be annulled by the general court." By art. 70 of the Amendments to the Constitution, approved in 1926, said art. 2 was amended by adding at the end thereof the following new paragraph: "Nothing in this article shall prevent the general court from establishing in any corporate town or towns in this commonwealth containing more than six thousand inhabitants a form of town government providing for a town meeting limited to such inhabitants of the town as may be elected to meet, deliberate, act and vote in the exercise of the corporate powers of the town subject to such restrictions and regulations as the general court may prescribe; provided, that such establishment be with the consent, and on the application of a majority of the inhabitants of such town, present and voting thereon, pursuant to a vote at

a meeting duly warned and holden for that purpose." One essential provision in each of these amendments is in identical words to the effect that no municipal or city government shall be erected and constituted and no limited town meeting form of government shall be established except "with the consent, and on the application of a majority of the inhabitants of such town, present and voting thereon, pursuant to a vote at a meeting duly warned and holden for that purpose." Manifestly these words have the same meaning in each amendment. In *Larcom* v. *Olin*, 160 Mass. 102, where the subject was somewhat discussed, it was said at page 104: "so far as we are aware, every town which has been made a city has been incorporated by a special act of the General Court, upon the application of the town, and the act, after it has been passed, has been accepted by the inhabitants of the town before it took effect as an act of incorporation"; and at page 108: "The practical construction put upon the proviso has been that the town must first make an application to the General Court by a vote of its inhabitants, and, if an act of incorporation is passed pursuant to the application, that the act must be submitted for acceptance to the inhabitants." An examination of the statutes enacted since that decision was rendered shows that that practical construction has been continued, in particular as to the submission of the act for acceptance to the inhabitants, not only in the statutes creating and constituting cities but also in all statutes concerning a limited town meeting form of government. It was decided in *Attorney General* v. *Methuen*, 236 Mass. 564, that an application must first be made to the General Court for an act of incorporation, and that a town could not become a city by approval, ratification, or acceptance of a statute purporting to be an act of incorporation enacted by the General Court without a precedent application for such act of incorporation. It is conceded in the case at bar that there was sufficient application made in accordance with a vote of the inhabitants of Braintree passed on April 11, 1932, for the enactment of a statute authorizing the establishment of a limited

town meeting form of government. That vote simply authorized a petition to the General Court for an act enabling the town to adopt a limited town meeting form of government. The form of that vote implied an expectation that there would be an opportunity for the inhabitants of the town to accept the statute after it was enacted. There was no attempt by that vote to accept or consent in advance to any statute that might be enacted. Application and acceptance or consent are different steps in the procedure prescribed by these two amendments to the Constitution; one is the preliminary, the other is the conclusion. The latter must follow the enactment of the statute. Commonly there cannot be consent or acceptance until the terms of the statute have become definite and specific by enactment. *Locke* v. *Selectmen of Lexington,* 122 Mass. 290. There is no uniformity as to the limited town meeting form of government described in art. 70 of the Amendments. While there is a general similarity between the statutes enacted, there are differences of detail. The standard form in G. L. (Ter. Ed.) c. 43A is permissible only in towns where there has already been constituted and established a form of representative town meeting government under a special statute enacted in conformity with the provisions of the Constitution. *Opinion of the Justices,* 229 Mass. 601. It has no pertinency to the case at bar. It was said in *Larcom* v. *Olin,* 160 Mass. 102, 108: "Whether two meetings and two votes are necessary or not, certainly there must be an application and a consent manifested by a vote pursuant to the proviso." The implication of this statement is that there must be two meetings and two votes. In any event, the consent and acceptance required by art. 70 of the Amendments to the Constitution cannot be found in the vote of April 11, 1932. That amendment definitely requires that the consent of the inhabitants of a town to a statute establishing in such town a limited town meeting form of government must be given by the requisite majority of the inhabitants "pursuant to a vote at a meeting duly warned and holden for that purpose." The words just quoted as used in the

Constitution have acquired a definite meaning in this Commonwealth. They convey but one idea, namely: "a meeting called under a written warrant setting out in fairly intelligible language the subjects to be acted upon by the voters, signed by the selectmen or, in the event of their unreasonable refusal, by a justice of the peace of the county, and served by the constable or other designated person. St. 1785, c. 75, § 5. Such a warrant is of the essence of the town meeting. It is necessary in order that the people may know in advance the subjects upon which they may be required to act." *Attorney General* v. *Methuen,* 236 Mass. 564, 574. This is in substance the provision of G. L. (Ter. Ed.) c. 39, § 10, as to the calling of town meetings. The General Court for a long period of years, in enacting statutes under art. 2 and art. 70 of the Amendments to the Constitution, has required that after the passage of the act and before it should become fully operative the consent of the inhabitants be manifested by a vote at a meeting duly warned and holden for that purpose. Such long continued interpretation of a constitutional provision by the legislative department of the government may be deemed to be the true construction of the Constitution. *Holmes* v. *Hunt,* 122 Mass. 505, 516. *Opinion of the Justices,* 126 Mass. 557, 600. *Answer of the Justices,* 214 Mass. 602, 606.

There was no article in the warrant for the annual town election of 1936 concerning said c. 56. It was recognized in § 12 of that chapter, already quoted, that the warrant for that annual election had been closed before the enactment of the statute. It therefore was impossible that the warrant for the annual town election in Braintree for the year 1936 should contain an article respecting the acceptance of said c. 56. This is the first instance, so far as we are aware, when the General Court has undertaken to provide in this manner that a subject shall be acted on at a town meeting. The contention that the General Court has thus manifested a valid and enforceable intention that due warning should not be given by the usual warrant is untenable in view of the terms of art. 70 of the Amendments to

the Constitution. The general laws as to the due warning for a town meeting were not changed. Doubtless those general laws may be modified by the General Court and different provisions enacted. *Stone* v. *Charlestown*, 114 Mass. 214, 222. But the constitutional requirement remained unchanged. The meeting must be "duly warned and holden" for the purpose of voting on the act. It is not necessary to determine whether special provision might be made in a particular instance as to the method of warning a town meeting. In the case at bar no such special provision was enacted. No provision whatever was made as to how the meeting for the expression of consent to the establishment of the limited town meeting form of government in Braintree should be "duly warned." There was no compliance with the mandate of the Constitution in this respect. *Attorney General* v. *Methuen*, 236 Mass. 564, 574. *Locke* v. *Selectmen of Lexington*, 122 Mass. 290. The publication in the local newspaper was not recognized as a valid warning, either by the statute or by the Constitution, and is of no avail.

The conclusion is that said c. 56 has not become operative in Braintree. The vote thereon at the annual town election in 1936 was of no effect.

*Peremptory writ of mandamus to issue.*