Zimmerman, J.
 

 This controversy involves Sections lc and
 
 Id,
 
 Article II, of the Ohio Constitution. Section lc is devoted particularly to the referendum, and states in substance that no law passed by the General
 
 *512
 
 Assembly shall go into effect until ninety days after it shall have been filed by the Governor in the office of the Secretary of ¡jétate. If within such time a verified petition signed by six per centum of the electors of the state shall have been filed with the Secretary of State ordering that such law or any section or item thereof be submitted to the electors for their approval or rejection, the Secretary of State shall submit such law or any designated part thereof to vote in a prescribed manner.
 

 Section
 
 Id
 
 reads: “Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. Such emergency laws upon a yea and nay vote must receive the vote of two-thirds of all the members elected to each branch of the General Assembly, and the reason for such necessity shall be set forth in one section of the law, which section shall be passed only upon a yea and nay vote, upon a separate roll call thereon. The laws mentioned in this section shall not be subject to the referendum.”
 

 The important question presented is whether this court will or should invade the legislative field and determine whether the amended act complained of constituted an emergency measure subject to passage as such, with immediate effect.
 

 Under similar constitutional provisions different courts have arrived at different conclusions.
 

 One line of authorities assumes the position that the legislative determination of an emergency is conclusive, made so by the Constitution itself upon compliance with the prescribed procedure, and brooks of no interference by the courts. Another line holds to the view that the legislative determination of an emergency is not conclusive, and it is within the province
 
 *513
 
 of the courts finally to determine the same in protection of the popular right of referendum. Many of the cases are collected in 7 A. L. R.,' annotation beginning at page 519, and the case of
 
 Hutchens
 
 v.
 
 Jackson,
 
 37 N. M., 325, 328, 23 P. (2d), 355, 356, cites and discusses a number of the leading authorities pro and con.
 

 This subject is not new in the Supreme Court of Ohio. 37 Ohio Jurisprudence, 812, Section 490. In
 
 County of Miami
 
 v.
 
 City of Dayton
 
 (1915), 92 Ohio St., 215, 110 N. E., 726, the eleventh paragraph of the syllabus reads:
 

 “The judgment of the General Assembly as to the emergency character of an act under the constitutional amendment of 1912 is not Conclusive, but its judgment in that behalf may be challenged in a proper proceeding at any time within the ninety day period, either as to the constitutional vote or the emergency character of the act.”
 

 However, the “emergency character” of the act under examination in the above case was not challenged, and paragraph eleven of the syllabus is based upon a few lines of
 
 obiter dictum
 
 in the opinion, beginning at the bottom of page 221, as follows:
 

 “Manifestly the Legislature’s judgment in that behalf [the emergency character of an act] * * * is not conclusive. The people’s right to a referendum on any act of the Legislature may be asserted in a proper proceeding and at a proper time, notwithstanding the action of the General Assembly of Ohio * *
 

 The question was squarely raised in the case of
 
 State, ex rel. Durbin,
 
 v.
 
 Smith
 
 (1921), 102 Ohio St., 591, 133 N. E., 457, and the court was hopelessly at odds. Two judges were of opinion that the legislative determination of an emergency was conclusive. Two reached the conclusion that the court could review and decide the matter and that the particular act under consideration came within the scope of emergency leg
 
 *514
 
 islation. Three members of the court vigorously contended the matter was not only open to judicial inquiry, but that no semblance of an emergency appeared in the act, and hence the court should so declare and thus allow a referendum thereon.
 

 It is submitted that the
 
 Durbin case,
 
 covering some eighty-one pages in the state report where it appears, offers a typical example of what may occur when courts occupy themselves in matching their judgment against that of the legislative branch of the government on whether a particular enactment is or is not of an emergency nature.
 

 Again, the identical principle was involved in
 
 Holcomb, Aud.,
 
 v.
 
 State, ex rel. Coxey, Sr.
 
 (1933), 126 Ohio St., 496, 186 N. E., 99, and the following rule ,of law is laid down in the third paragraph of the syllabus :
 

 ' “The duty and responsibility of determining the emergency and the necessity that a measure go into immediate effect are confided to the legislative branch of the government. If the prescribed procedure for enactment thereof is followed, such measure goes into effect immediately upon its passage.”
 

 All six members of the court who participated in the consideration of that case joined in the decision without reservations. While Section
 
 Id,
 
 Article II, of the Constitution was not directly implicated, .it was specifically referred to, and the case dealt with an almost analogous section of the General Code. Regardless of the subject matter of the
 
 Goxey case,
 
 the fact remains that what was said in the opinion and carried into the third paragraph of the syllabus is dispositive of the instant controversy, if applied.
 

 This court having so recently taken a definite and united stand on the issue now raised, and such stand being supported by good reasons and respectable authority, a majority of the present members see no
 
 *515
 
 sufficient cause for a “turn about face.” Certainly, in a matter like tbe one confronting us, any merit of the individual case affords no adequate ground for the overthrow of an established policy. If the interpretation given to Section
 
 Id,
 
 Article II, of the Constitution is unsatisfactory, remedy is open for the people of Ohio to speak plainly on the subject by a change in the Constitution.
 

 The existing attitude of the court has been clearly set out in former decisions. Those decisions are available and it would serve no useful purpose to repeat the arguments.
 

 A comprehensive statement supporting the rule that the legislative determination of an emergency is conclusive is made by Gabbert, C. J., in
 
 Van Kleeck
 
 v.
 
 Ramer, Secy. of State,
 
 62 Colo., 4, 11, 156 P., 1108, 1111, wherein he says:
 

 “The argument of counsel for petitioner that the courts are vested with authority to determine whether an act is of the character which excepts it from the referendum, notwithstanding the declarations by the General Assembly that it is, is based upon the assumption that unless the courts exercise the power to determine that question, the people can be deprived of the right to refer a law, if the Legislature, either intentially or through mistake, declares falsely or erroneously that a law is necessary for the immediate preservation of the public peace, health, or safety. The answer to this proposition is that under the Constitution the General Assembly is vested with the exclusive power to determine that question, and its decision can no more be questioned or reviewed than the decisions of this court in a case over which it has jurisdiction. It will not be presumed that the General Assembly will disregard its duty or fail to observe the mandates of the Constitution, or not act honestly. Neither can it be assumed that the courts are better
 
 *516
 
 able to determine whether a law is immediately necessary for the preservation of the public peace, health or safety, than the Legislature. Power may be abused, but that is not a valid reason for one co-ordinate branch of the government to assign for limiting the power and authority of another department. The judicial department is as much bound by constitutional provisions as' any other. ‘It cannot run a race of opinions upon points of right reason and expediency with the law-making power. ’ The courts do not make constitutions or change them. They can only construe the provisions of that instrument. So that the only power we can exercise in solving the question presented is to ascertain where the authority to determine when a law is exempt from the referendum, is lodged. * * *
 

 “The only test is, what department of government is authorized, under the Constitution, to determine whether an act is necessary for the purposes specified. This authority, as we have pointed out, is vested in the General Assembly, and if that body erroneously or wrongfully exercises that authority, the remedy is with the people. It is not subject to review by the courts or any other authority, except the people. Under the reserved power of the initiative and referendum, after the declaration by the General Assembly that a law is necessary for the immediate preservation of the public peace, health, or safety, when not referred to the people for their judgment, it still remains with them if they are dissatisfied with it, to cause a measure to be submitted at the next general election for its repeal. If, from experience, it appears necessary to deprive the General Assembly of the power to declare a law necessary for the purposes specified, the people have the power to initiate an amendment to the Constitution which will take from the General Assembly the authority which they have
 
 *517
 
 vested in it. But this cannot be accomplished by the courts usurping a power they do not possess.”
 

 A fundamental principle should not be surrendered to meet the exigencies of a passing case. If every member of the court concurring in this decision were of the opinion that the act presently before us is not on its face an emergency measure, that would not alter the situation in the slightest under the rule of our adoption. In other words, since the people in their Constitution have made the General Assembly the exclusive arbiter of whether a proposed act is in truth an emergency measure upon a dual affirmative vote of at least two-thirds of the elected members, no court has the power or authority to interfere with the judgment so exercised. If the General Assembly abuses its prerogative, the people are not lacking for methods of correction.
 

 The contrary rule would permit a court to step from its bench to the legislative halls and arbitrarily or capriciously override the judgment of the department of government to which the
 
 enactment
 
 of legislation has been expressly confided by the people.
 

 “One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions is thought to be dependent in no small degree on a strict observance of this salutary rule. Each of the three grand divisions of the government must be protected from encroachments by the others, so that its integrity and independence may be preserved. It is incumbent on each officer of the different departments of our government to perform the duties and exercise the authority of his office without in any wise interfering with the power, discretion or authority of the officers in either of the other departments.’.’ 8 Ohio Jurisprudence, 231, Section 128.
 

 
 *518
 
 The demurrer to the petition is sustained and writ denied.
 

 Writ denied.
 

 Weygandt, C. J., Jones, Matthias and Myers, JJ., concur.
 

 Day and Wihliams, JJ., dissent.