JACK E. MOLESWORTH & others vs. SECRETARY OF THE COMMONWEALTH & another.

Suffolk. November 8, 1963. — February 14, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Constitutional Law*, Referendum, Emergency law, Construction of Constitution. *Statute*, Emergency law, Preamble. *Jurisdiction*, Justiciable question. *Words*, "Public convenience," "Emergency."

Whether the recitals in an emergency preamble of a statute comply with the requirements of art. 48 of the Amendments of the Massachusetts Constitution, The Referendum, II, is a justiciable question. Per SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.; KIRK and SPIEGEL, JJ., being of the contrary opinion. [50]

Discussion of emergency preambles of laws in Massachusetts and elsewhere. [50–58]

A long continued legislative practice, although not conclusive, is entitled to be given weight by this court in interpreting relevant provisions of the Massachusetts Constitution. [54]

Reading as a whole St. 1963, c. 506, providing for increases in the salaries and allowances of members of the General Court effective upon its passage, the emergency preamble thereof, reciting that the "deferred operation of this act would tend to defeat its purpose, which is in part to provide forthwith for the payment of increased allowances . . . to members of the General Court, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience," adequately ". . . [sets] forth the facts constituting the emergency" as required by art. 48 of the Amendments of the Massachusetts Constitution, The Referendum, II. Per SPALDING, CUTTER, & REARDON, JJ.; WHITTEMORE, J., dissenting. [58–59, 60–61]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on July 12, 1963.

The case was reserved and reported by *Whittemore, J.*

*Irving Goodman* for the petitioners.

*Nelson I. Crowther, Jr.*, Assistant Attorney General, for the respondents.

CUTTER, J.  This is a petition for a writ of mandamus to compel the Secretary of the Commonwealth to provide blanks for subsequent signers on a petition for a referendum upon, and suspension of, St. 1963, c. 506.  That statute provided for an increase in salary and expense allowances for members of the General Court.  The petitioners also have asked that the Treasurer and Receiver General be restrained from making any payments under the act.  The single justice ordered that the blanks be issued without prejudice, denied the prayer for a restraining order, and reserved and reported the case for the consideration of the full court.  The question presented is whether the act is an "emergency" measure.

In 1918, the Massachusetts Constitution was amended to provide in art. 48 of the Amendments, The Referendum, I, "No law passed by the general court shall take effect earlier than ninety days after it has become a law, excepting laws declared to be emergency laws and laws which may not be made the subject of a referendum petition, as herein provided."  Then follows II (as amended by art. 67), "A law declared to be an emergency law shall contain a preamble *setting forth the facts constituting the emergency,* and shall contain the statement that such law is necessary for the immediate preservation of the public peace, health, safety or convenience.  A separate vote, which shall be recorded, shall be taken on the preamble, and unless the preamble is adopted by two-thirds of the members of each House voting thereon, the law shall not be an emergency law.  Upon the request of two members of the Senate or of five members of the House of Representatives, the vote on the preamble in such branch shall be taken by call of the yeas and nays. . . ." (emphasis supplied).  Next follows a provision, not now relevant, for a statement by the Governor in declaring an act an emergency measure.  The amendment also provides, in III, §§ 3 and 4, for a referendum both on emergency laws and other laws not within the excluded matters. It permits the suspension of the statute pending the outcome of the referendum only if it is not an emergency law.

Thus, the petitioners are entitled to blanks calling for the suspension of St. 1963, c. 506, if the statute is not an "emergency law."

Statute 1963, c. 506, provides for increased allowances (§§ 5 and 6)[1] and for increased salaries (§ 4) for 1963. It also provides for increased annual compensation (§§ 1 and 3) and increased expense allowances (§ 2) beginning January 1, 1964.

The preamble to St. 1963, c. 506, refers only to the increased allowances (and not to the salary increases). It reads, "*Whereas,* The deferred operation of this act would tend to defeat its purpose, which is in part to provide forthwith for the payment of increased allowances for expenses, travel, lodging and meals to members of the General Court, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience." The petitioners contend that the preamble is defective for failure to state facts constituting the emergency. The respondents maintain that the preamble is adequate and that the General Court's judgment as to its constitutional sufficiency is conclusive upon this court.

The case presents constitutional questions of importance and difficulty. Our deliberations have resulted in a diversity of views among the six Justices participating in the decision. The Chief Justice, because of illness, was unable to be present at the arguments and has not taken part in the decision.

---

[1] Section 5 provides that, in addition to the expense allowance under G. L. c. 3, § 9B, as inserted by St. 1953, c. 263, § 1 ($400 per year, payable $50 on the first day of each session and $50 on the first day of each following month), each member of the General Court shall for 1963 receive for expenses $200, payable $25 on the first day of each month and the balance, if any, on the last day of the session. Section 6 provides for "the balance of" 1963, increases in the other allowances under c. 3, § 9B, as follows: (1) for members living less than forty miles from the State House (a) for travel, an increase from seven cents a mile to eight cents a mile; (b) for attendance, an increase from $4.50 to $7 per day; (2) for those living forty miles or more from the State House who do not elect allowances at the increased rates already mentioned, an increase in the allowance for a weekly round trip from seven to eight cents a mile and in the allowances for room and board from $9.50 to $15. These allowances are payable on weekly vouchers. Section 7 provided that §§ 1, 2, and 3 should become effective on January 1, 1964, and that §§ 4, 5, and 6 should become effective on the passage of the act.

1.  At the outset, we are met with the question whether there is judicial review of the adequacy of the preamble in c. 506 under art. 48.   On this issue, the members of the court are divided.

Mr. Justice Kirk and Mr. Justice Spiegel are of opinion that the recitals in an emergency preamble are left by art. 48 wholly to the Legislature, and present no justiciable question.   See *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365, 366; *Davison* v. *Johonnot,* 7 Met. 388, 395–396, quoted below, fn. 5.

Mr. Justice Spalding, Mr. Justice Whittemore, Mr. Justice Reardon, and the writer of this opinion hold that whether such a preamble complies with the requirements of art. 48 is a justiciable question and that it is our constitutional duty to pass upon that question, when and if properly raised in the course of litigation by one entitled to raise it.   *Horton* v. *Attorney Gen.* 269 Mass. 503, 507.   See *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 196–197.

Although all the participating judges, except Mr. Justice Whittemore, concur in the result, the reasons hereinafter set forth are those expressed by Mr. Justice Spalding, Mr. Justice Reardon, and the writer of this opinion.

2.  The vital question is whether the preamble to c. 506 adequately sets "forth the facts constituting the emergency."   In deciding this issue we, of course, must presume that the Legislature intended a statement that would comply with the requirements of art. 48, The Referendum, II.   This legislative action is entitled to the same presumption of regularity and validity that is given to the substance of statutes when they are attacked on constitutional grounds.   *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 700, and cases cited.

(a)  The Massachusetts constitutional provisions with respect to so called emergency preambles, and the related referendum, differ from those in effect in certain other States. One principal difference is that, in Massachusetts, the justification for legislative action making a statute immediately

effective may rest upon general aspects of "public convenience" as well as upon more serious situations affecting "the public peace, health [or] safety."[2] The term "emergency," under the Massachusetts constitutional provision, thus has a somewhat artificial and unnatural meaning, for most members of the public probably would not regard the needs of mere "public convenience" as giving rise to a true "emergency." See *Prescott* v. *Secretary of the Commonwealth*, 299 Mass. 191, 200, where this general subject is discussed. Cf. e.g. Maine Const. (1955), art. IV, part Third, §§ 16, 17; Ark. Const. Amend. No. 7, § 1.

In Massachusetts also, unlike the situation in some States, the adoption of an emergency preamble does not prevent the measure to which the preamble is attached from being subject to referendum at the next election. Cf. e.g. *Morris* v. *Goss*, 147 Maine, 89, 104, 110; Ohio Const. Art. II, §§ 1c, 1d; *State ex rel. Schorr* v. *Kennedy*, 132 Ohio St. 510, 511–512. The principal consequences in Massachusetts of adopting a so called "emergency" preamble are to make the measure effective upon its passage rather than ninety days thereafter, and to prevent the operation of the measure from being suspended until after the next biennial election. We must recognize, in considering our own Constitution, that the position taken by courts in some other States[3]

---

[2] In Bulletin No. 6, The Initiative and Referendum, prepared by the Commission to Compile Information and Data for the Use of the Constitutional Convention, Bulletins, 1917–1918 Convention, vol. 1, 183, 203–205, there was discussion of "emergency" requirements in the referendum provisions of other States, and it was said, "The definition of 'emergency measures' which has found widest acceptance is: 'measures immediately necessary for the preservation of the public peace, health, or safety.'" This, of course, is a much more strict requirement than the "public convenience" standard of art. 48. The term "public convenience" was included in the "emergency" section of the first proposal for an initiative and referendum amendment submitted to the convention. See Convention Doc. No. 7, p. 5. That section was not altered in respects here material by the report of the committee on initiative and referendum. See Convention Doc. No. 335, dated July 23, 1917. There was only casual and uninformative discussion of the emergency section on the convention floor. See Debates, Const. Conv. 1917–1918, vol. 2, pp. 4, 497–498, 509–510, 783–784, 902–903, 948–949.

[3] In two States, Arkansas and Maine, where the Constitution does not regard "public convenience" as a basis for an emergency preamble, it has been held necessary to state the facts constituting the emergency. See *Jumper* v. *McCollum*, 179 Ark. 837, 839–840; *Gentry* v. *Harrison*, 194 Ark. 916, 920–922;

in reviewing emergency preambles in part may have been induced by the more rigid constitutional definitions of "emergency" there applicable and, to some extent, by the more significant practical consequences of the adoption of such a preamble.

(b) A determination that a statute should, for reasons of public convenience alone, take effect at once rather than after the lapse of ninety days is so obviously a matter of legislative policy that no court should disregard or question the determination unless, in the manner of its adoption or in substance, there has been plain violation of some constitutional mandate. The discretion involved in determining whether an immediate effective date is "necessary for the immediate preservation of the public . . . convenience" is so broad that any judicial review is inevitably extremely limited. "Public convenience" is a comprehensive term. It would be difficult for a court to say that the Legislature was plainly wrong in deciding to put a statute into effect at once, if reading the statute as a whole brings to mind any substantial basis for believing that the public convenience would be served by having the statute in effect during the ninety days immediately following its passage.

(c) There is no indication that the Constitutional Convention attached any special importance to the words "setting forth the facts constituting the emergency." Nothing in the debates (see fn. 2) suggests that these words were

*Fulkerson* v. *Refunding Bd.* 201 Ark. 957, 961–962; *Mann* v. *Lowry*, 227 Ark. 1132, 1139–1140; *Payne* v. *Graham*, 118 Maine, 251, 256. A very brief statement suffices. *Morris* v. *Goss*, 147 Maine, 89. *Opinion of the Justices*, 153 Maine, 469, 474. See also *Maine Employment Sec. Commn.* v. *Charest*, 158 Maine, 43, 50. California seems also to reach a similar result. *Stockburger* v. *Jordan*, 10 Cal. 2d 636, 642–643. *Davis* v. *County of Los Angeles*, 12 Cal. 2d 412, 418–423. *Hollister* v. *Kingsbury*, 129 Cal. App. 420, 422–425. *Behneman* v. *Alameda-Contra Costa Transit Dist.* 182 Cal. App. 2d 687, 690–692. The latest case in Ohio, dealing with an ordinance, appears consistent with the Maine cases. *Youngstown* v. *Aiello*, 156 Ohio St. 32, 36–37, but see *State ex rel. Schorr* v. *Kennedy*, 132 Ohio St. 510, 512–514. See *Graham* v. *Dye*, 308 Ill. 283, 286–291. In *Greenberg* v. *Lee*, 196 Ore. 157, 161–162, 182–186, a somewhat meager emergency preamble in an ordinance was sustained under a statutory provision requiring that the municipal legislative body "specify with distinctness the facts and reasons constituting such emergency," but the court stated that a conclusion of fact was at least required. Cf. *Hill* v. *Taylor*, 264 Ky. 708, 716–718. Cases on the general subject are discussed in annotations, 7 A. L. R. 519; 110 A. L. R. 1435.

given any consideration whatsoever in the discussion of what is now art. 48. All that appears is that the words were in the most detailed original proposal for a very long amendment and were retained.

(d) In the absence of indication that special significance was attached by the Constitutional Convention to the provision for stating the facts, it is apparent that the provision must be construed with reference to the circumstance that "public convenience" will justify the adoption of an emergency preamble. Slight grounds will warrant the Legislature in concluding that public convenience will be served by making the act effective at once. Accordingly, little is needed to satisfy the requirement for a statement of facts.

(e) This view was taken by the first Legislature which had to deal with such preambles. Article 48 of the Amendments became effective shortly after the 1917–1918 Convention. In 1919 the Legislature began to employ, in stating the facts constituting the so called emergency, a recital that deferred operation of the particular act would tend to defeat its purpose. For convenience this general form of statement is hereafter referred to as the standard statement. Such a standard statement was used in that year in a number of statutes.[4] This legislative practice, contemporaneous with the adoption of art. 48, is strong indication that legislators, familiar with what had gone on in the Constitutional Convention, regarded the words, "a preamble setting forth the facts constituting the emergency," as requiring nothing but the minimum standard statement. This

---

[4] For statutes in which there was no amplification of the standard statement, see St. 1919, cc. 13, 55, 119, 125, 270, 273, 295, 322, 324, 332, 359; Sp. St. 1919, cc. 244, 245. For statutes repeating to some extent the purpose of the act in the preamble and indicating some urgency in accomplishing that purpose, see St. 1919, cc. 120, 138, 139, 151, 164, 190, 283, 316, 342. For preambles that also state an underlying fact, discernible in the body of the statute, see St. 1919, c. 61 ("There is need of a law authorizing . . . memorials . . . [to servicemen])"; c. 126 ("It is fitting that a day should be set apart to celebrate the home-coming of . . . [servicemen])." For preambles that recited a fact not readily apparent in the body of the act, see St. 1919, c. 257 ("present scarcity of houses and buildings"); Sp. St. 1919, c. 246 ("The quarters provided for by this act are needed at once"). For a statute strikingly similar in substance and form to St. 1963, c. 506, see St. 1919, c. 273, "An Act to regulate the mileage allowance of members and certain employees of the general court," where the standard statement was used.

view may have rested upon the realization that a very slight basis for legislative action is necessary where "public convenience" alone is involved.

Contemporary usage, of course, is not conclusive of correct constitutional interpretation, and even long continued disregard of a clear constitutional provision cannot change its meaning. See *Ayer* v. *Commissioner of Admn.* 340 Mass. 586, 595–596; *Stockburger* v. *Jordan,* 10 Cal. 2d 636, 648–649. Nevertheless, the long continued practice by another branch of our tripartite government is entitled to very great weight in interpreting what art. 48 requires. See *Portland Bank* v. *Apthorp,* 12 Mass. 252, 257; *Opinion of the Justices,* 126 Mass. 557, 594; *Fitzgerald* v. *Selectmen of Braintree,* 296 Mass. 362, 367. We should hesitate at this late date to say that art. 48 compels more. See the statement in 1844 by Dewey, J. in *Davison* v. *Johonnot,* 7 Met. 388, 395–396.[5]

(f) The practice which began in 1919 has now become widely accepted. Today many preambles set forth no other basis, or little more basis, for the emergency than the standard statement, augmented frequently by a paraphrase or summary of the statutory purpose. See e.g. St. 1963, cc. 71, 128, 141, 161, 188, 219, 239, 247, 258, 259, 290. Accordingly, we must recognize (1) that a decision that this preamble is insufficient will run counter to at least a frequent legislative practice of over forty years, and (2) that we may create doubts[6] as to the validity of many comparable emergency

---

[5] ". . . [W]e have an uninterrupted course of legislation of a similar character, for the period of sixty four years that have elapsed since the adoption of the constitution which is supposed by the demandant to contain provisions controlling and restraining such exercise of legislative power. It has been again and again said by this court . . . that the construction of the constitution, given by the legislature by a long continued course of legislative acts, ought to have great weight in the consideration of a question like the present; and is not to be overruled unless manifestly erroneous. The vast amount of property, now held under titles derived from similar legislative acts, should lead us to proceed most cautiously in the investigation of this subject, and to deal with it in a liberal spirit, when called upon judicially to declare that this course of legislation conflicts with the constitution, and that all . . . acts of this character are of no validity."

[6] In view of the result which we reach, we do not need to determine whether such doubts as may exist could be removed by ratifying legislation, nor need we consider whether it is open to litigants to question the sufficiency of an emergency preamble as to which no referendum under art. 48 has been sought within the ninety day period.

preambles adopted over the period since 1919. Possible practical consequences of a decision that the standard preamble is inadequate should not lead us to acquiesce in a substantive violation of art. 48, but we also should not over-emphasize deficiencies of form if the substance of the reasons which led to making the statute effective at once are reasonably apparent from reading the preamble with the statute as a whole.

3. For over a decade after art. 48 became effective, no court decision dealt with the problem directly. The first case to discuss the matter was in 1931, when in *Yont* v. *Secretary of the Commonwealth*, 275 Mass. 365, 366, the court considered very briefly an emergency preamble, which contained the standard statement. Chief Justice Rugg, after quoting the standard statement language, said, ''By virtue of this preamble, the act became effective forthwith.'' This sentence was not necessary to the decision, because the measure then under consideration was within the ''excluded matters'' described in The Referendum, III, § 2, of art. 48. The case may have been taken, however, as giving sanction to the standard statement form of preamble.[7]

In *Opinion of the Justices*, 286 Mass. 611, 614, 623, this court considered 1934 Senate Bill No. 317, entitled, ''An Act further regulating the use of traps and other devices for the capture of fur-bearing animals and providing for local option thereon.'' A proposed emergency preamble contained little more than the standard statement. At page 623, the Justices said, ''The emergency preamble of the proposed bill sets forth facts constituting the emergency to be that the deferred operation of the act would 'in part defeat its purpose to terminate without further delay the uncertainty which has attended its subject matter' and declares that it is 'necessary for the immediate preservation of the public convenience.' '' This preamble says little, if anything,

---

[7] The title and the substance of St. 1931, c. 122, considered in the *Yont* case, showed that it was designed to accelerate highway construction ''in order to alleviate the present unemployment emergency.'' Those who join in this statement of reasons think the *Yont* case decided no more than that the bill was within the excluded matters. See the *Yont* case, at p. 366.

more than the preamble in the present case, although from it one may infer that there had been some troublesome un-·certainty which would continue unless the measure should become effective immediately.

In three other cases, the court, without any discussion of the problem, assumed that acts with very brief emergency preambles took effect upon their enactment. See *O'Donnell* v. *Registrar of Motor Vehicles,* 283 Mass. 375, 378 ("deferred operation . . . would, in part, defeat its purpose," see St. 1928, c. 344), *Pittsley* v. *David,* 298 Mass. 552, 554 ("would cause substantial inconvenience," see St. 1936, c. 49), and *McNear* v. *Director of the Div. of Employment Security,* 327 Mass. 717, 721 ("Necessary readjustments . . . have been too long delayed and the deferred operation . . . would further delay," St. 1947, c. 440). The opinions do not set out the preambles and do not suggest that the problem, now under discussion, was considered.

Two cases deal directly with the sufficiency of emergency preambles or declarations. *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191. *Russell* v. *Treasurer & Recr. Gen.* 331 Mass. 501, 503–504. In each case the emergency provision was held adequate.

The *Prescott* case discussed the effectiveness of the Governor's declaration[8] that "delayed operation . . . will result in inconvenience to the public and to . . . officials . . . who in . . . framing . . . their annual budgets must be certain as to the financial requirements for each budget item involving public expenditures for governmental activities" (p. 195). Although it deemed the recital adequate to state

---

[8] Article 48, The Referendum, II, provides that the Governor may cause a law to "take effect without suspension, or if such law has been . . . suspended [cause] such suspension . . . [to] terminate" by filing with the Secretary of State a statement of the emergency and "setting forth the facts constituting the emergency." Such statements by the Governor (see e.g. St. 1956, cc. 556, 705, 718; St. 1958, cc. 557, 606; St. 1962, cc. 429, 598; St. 1963, cc. 62, 377, 395, 525, 564, 665, 749, 821) have on occasion set out with greater particularity (than in most legislative emergency preambles) the facts constituting the emergency which is being declared. It may be that this desirable practice has been based not upon any sense of constitutional necessity but in the belief that, where the Legislature has not attached an emergency preamble, the Governor should explain why he, acting alone, has declared an emergency.

an emergency, the court said (p. 202), as to the provision in
art. 48 calling for a statement of facts, "It may well be
that failure to comply with this requirement would render
a statement ineffective . . . . No such case is presented.
One purpose, at least, of this requirement is to place on
record the grounds of the Governor's action for the infor-
mation of the citizens to whom he is answerable. . . .  It
may . . . have some tendency to show an intention that his
action shall be subject to judicial review . . . on the face of
his statement.  And, so far as judicial review may be had,
the facts set forth exclude from consideration, as justifying
the Governor's action, any emergency other than that upon
which he relies as constituted by those facts."  The court
then (p. 203) assumed that the Governor's action was "sub-
ject to judicial review with respect to the sufficiency of the
facts set forth by him," and said that his action in declar-
ing the emergency "cannot be held invalid unless, giving
effect to every presumption in its favor, it is wholly with-
out support in the facts set forth."  The court, in deter-
mining (pp. 203–204) whether the facts recited revealed an
emergency of public convenience, looked beyond the recitals
to the substance of the statute, and also took notice of other
laws to see how municipal and town finances would be af-
fected by the statutory changes for which the act provided.

In the *Russell* case, 331 Mass. 501, the court held adequate
a recital (p. 503) that "deferred operation of this act would
tend to defeat its purpose," which was "to alleviate the
severe shortage of rental housing . . . which shortage has
caused a serious emergency detrimental to the public peace,
health, safety and convenience . . . ."  The court said (pp.
503–504) : "Although, technically, it is the purpose of the
act which is stated as a fact, the statement amounts to a
declaration that there is a severe shortage of rental hous-
ing . . . which has caused a serious emergency and that the
purpose of the act is to alleviate this shortage."  Despite
the statement in the preamble that there was a housing
shortage, the court looked also (p. 504) to § 1 of the statute,
which recited facts concerning the shortage.

There is thus no instance in which a Massachusetts emergency preamble or declaration has been declared inadequate. In several decisions very brief preambles of the type before us have been assumed to be adequate. In the *Prescott* case and in the *Opinion of the Justices* (286 Mass. 611, 614, 623) vague preambles were regarded as sufficient, although resort to other statutes was necessary to explain the conclusions of fact expressed in the preambles. Our decisions provide no clear standard for determining whether a preamble is inadequate. With recognition that there is little in our cases to guide us, we consider what is essentially the standard statement in St. 1963, c. 506, viz. that delayed operation will tend to defeat the statutory purpose, augmented by a summary of the relevant purpose, "which is in part to provide forthwith for . . . increased allowances for expenses, travel, lodging and meals to members of the General Court." We must determine whether that augmented standard statement is sufficient in itself as a reason for advancing the measure's effective date or sufficiently refers to, or incorporates by reference, any legislative determinations of fact apparent from examining the statute as a whole.

4. We consider the augmented standard statement to be a conclusion of fact, viz. that a ninety day delay in the measure's effective date would tend to defeat that part of its purpose which was to provide "forthwith" a new scale of allowances. This statement is true for obviously the new scale of allowances could be paid "forthwith" only if the measure should become effective at once. The statement also designated and referred to the particular portion of the measure which gave rise to the adoption of the preamble.

Implicit in the enactment of c. 506 was a legislative finding that the old scale of allowances was insufficient and that a higher scale was proper. The adoption of the emergency preamble and the enactment of § 7 (making §§ 4, 5, and 6 effective upon the passage of the act, see fn. 1, *supra*) implied that the Legislature found it to be in the public interest and for the public convenience to have the new scale of

allowances take effect at once. The substance of these implied findings might have been set out directly in the preamble in such form as, ''The Legislature concludes that the present scale of allowances for expenses, travel, lodging, and meals to members of the General Court is inadequate and that a higher scale is proper now and should be paid forthwith.'' It would probably not be contended that such a sentence was insufficient under art. 48. Certainly, we could not say that such a statement had no conceivable foundation in fact, having in mind the rising trend in recent years of costs of board, lodging, and travel, nor could it be said that there was plainly no ground for the legislative conclusion that public convenience would be served by having the new scale go into effect at once. The matter would be within the area of policy judgment in which the Legislature is responsible not to the courts but to the people, who can express their judgment at the next election.

An express statement, such as has been outlined above, of course, would be an appropriate and literal compliance with art. 48. The augmented standard statement found in c. 506, however, says substantially the same thing by implication, by referring to the statutory purpose and to the act itself. When the preamble and the body of c. 506 are read together, it is apparent that the Legislature concluded that a new scale of allowances was required at once and that, if the objective of paying the new scale forthwith was to be achieved, the act must become effective at once.

The issue really comes down to a question of form as against substance. We are not prepared to hold that art. 48 requires a statement in the preamble, in precise verbiage, of what the preamble, read with the act and in the light of its purpose, necessarily imports. Such a construction of the language of art. 48 is not required by anything in its origin or history. It would not be in conformity with the reasonably consistent practice of a coördinate branch of State government for nearly half a century. It would place undue weight on form alone. For all the reasons discussed above, we hold that the augmented standard statement in the preamble satisfies art. 48.

We have given consideration to the decisions in other States (see fn. 3, *supra*). Many of them relate to constitutional provisions somewhat different from art. 48, in one respect or another. They give a more rigid interpretation of the requirement to state the facts constituting the emergency than we think is proper in the light of the history of art. 48 and the legislative practice and court decisions since 1919.

As stated above, Mr. Justice Kirk and Mr. Justice Spiegel concur in the result.

The emergency preamble of St. 1963, c. 506, is sufficient, so that the statute was effective forthwith. An order is to enter directing the Secretary of the Commonwealth to take no further steps for the referendum on the statute as a non-emergency measure.

*So ordered.*

WHITTEMORE, J. (dissenting)   I am unable to find in the preamble to St. 1963, c. 506, any statement "setting forth the facts constituting the emergency" as the Constitution requires. Nor, as I read it, is there any such statement in the body of the statute which provides, in part, for payments of increased allowances in the 1963 session. An implication that supporting facts underlie the statute does not appear to me to be enough.

The facts that probably constituted the emergency of public convenience and that led to the enactment of St. 1963, c. 506, with its emergency preamble, come to mind when the statute is read. They include the general increase in the cost of board, room, and travel and the burden of long legislative sessions. These facts are not stated, however, as of course they could have been. Indeed, if the preamble in c. 506 were to be held inadequate, such facts could be stated in legislation to be enacted, which, I think, could serve to confirm the payments made under c. 506, and those to be made in the period until the referendum.

I read the *Prescott* case, 299 Mass. 191, 202, as construing a statute with an express recital in the preamble, the *Russell* case, 331 Mass. 501, 503–504, as construing a statute

with such a recital in the preamble and in the body of the statute, and the *Yont* case, 275 Mass. 365, 366, as speaking of a statute with an express recital of an emergency fact in the title adequately incorporated in the preamble by reference.

Long continued legislative practice certainly reinforces the solemn obligation that exists in every case in which an act of a coördinate branch of the government is put in issue, that is, to indulge every presumption in support of the validity of the act. Notwithstanding my recognition of this obligation and my regard for the views of my colleagues, I am unable to conclude that the preamble to St. 1963, c. 506, is constitutionally adequate.