RICHARD ANDREW *vs.* COMMISSIONER OF CORRECTION. No. 04-P-792. June 9, 2005. *Statute,* Amendment, Effective date. *Imprisonment,* Good conduct deductions. *Commissioner of Correction. Governor.*

Richard Andrew was convicted, as a juvenile, of murder in the first degree and is currently incarcerated.[1] He filed this declaratory judgment action against the commissioner of correction (commissioner), seeking a judicial determination that he is eligible to receive statutory and earned good time credits. On the parties' cross motions for summary judgment, a judge of the Superior Court ruled in favor of the commissioner. We consider Andrew's appeal.

The sole issue presented is whether Andrew is subject to St. 1992, c. 398 (the Act), which made several changes relating to juvenile adjudications. Pertinent here, § 5 of the Act amended G. L. c. 119, § 72, to prohibit juveniles convicted of murder in the first degree from obtaining good time credits under G. L. c. 127, §§ 129 and 129D.[2] Such credits had only recently become available to this category of offender based on a 1991 amendment to G. L. c. 119,

---

[1]Subsequent to Andrew's conviction, the Legislature transferred jurisdiction over persons aged fourteen through sixteen, who are charged with committing murder in the first or second degree, from the Juvenile Court to the Superior Court. See St. 1996, c. 200, § 14 (adding G. L. c. 119, § 72B), and § 15 (amending G. L. c. 119, § 74).

[2]General Laws c. 127, § 129, later was repealed as to all offenses committed on or after July 1, 1994. See St. 1993, c. 432, § 10. See also *County of Barnstable* v. *American*

§ 72, requiring that juveniles convicted of murder in the first degree be sentenced to a mandatory term of fifteen to twenty years. St. 1991, c. 488, § 7. As a result of the 1991 amendment, juveniles were to be sentenced to a specified term of imprisonment and therefore gained access to statutory and earned good time credits for the first time, pursuant to G. L. c. 127, §§ 129 and 129D. See note 2, *supra.*

Andrew contends that the Act does not apply to him because it was not in effect on the date of his offense, i.e., March 6, 1993. The Act was approved by then-Governor William F. Weld on January 14, 1993, and declared by him to be an emergency law in a statement filed with the Secretary of the Commonwealth; however, Andrew contends that the Governor did not comply with the requirements of art. 48, The Referendum, II, of the Amendments to the Massachusetts Constitution, in his declaration of emergency, and thus the Act did not actually take effect until ninety days after its approval. See art. 48, The Referendum, I, of the Amendments to the Massachusetts Constitution; G. L. c. 4, § 1; *Vittands* v. *Sudduth,* 41 Mass. App. Ct. 515, 518 (1996).

The Governor's emergency declaration stated as follows:

> "[I]n my opinion, the immediate preservation of the public peace, health, safety or convenience requires that the attached Act, Chapter 398 of the Acts of 1992 . . . should take effect forthwith."

> "I further declare that, in my opinion, it is in the public interest that this Act take effect immediately in order to enhance the delivery of juvenile justice services in the courts of the Commonwealth, as provided for in this Act, as quickly as possible."

Andrew claims that the declaration was defective because it failed to adequately "set[] forth the facts constituting the emergency," as required by art. 48. See art. 48, The Referendum, II, of the Amendments to the Massachusetts Constitution. We disagree. As a general proposition, emergency preambles and declarations are entitled to substantial judicial deference. See, e.g., *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 203 (1938) (an emergency declaration "cannot be held invalid unless, giving effect to every presumption in its favor, it is wholly without support in the facts set forth"); *Molesworth* v. *Secretary of the Commonwealth,* 347 Mass. 47, 52-53 (1964) (judicial review is "extremely limited"; "little is needed to satisfy the requirement for a statement of facts"). Indeed, our cases uniformly have upheld the validity of emergency preambles and declarations. See, e.g., *Russell* v. *Treasurer & Recr. Gen.,* 331 Mass. 501, 503-504 (1954); *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 699-700 (1971); *Sears* v. *Secretary of the Commonwealth,* 369 Mass. 392, 405-406 (1975); *Mirageas* v. *Massachusetts Bay Transp. Authy.,* 391 Mass. 815, 820-821 (1984).

Andrew urges us to employ a more exacting standard in our review of gubernatorial declarations than has been applied to emergency preambles of the Legislature; however, we discern no legal basis for making such a distinction. Like an emergency preamble, a Governor's emergency declaration

---

*Financial Corp.,* 51 Mass. App. Ct. 213, 214 n.3 (2001). Earned good time under c. 127, § 129D, remained unaffected. See *Commonwealth* v. *Brown,* 47 Mass. App. Ct. 616, 623 n.10 (1999), *S.C.,* 431 Mass. 772 (2000).

is entitled to substantial deference. Compare *Molesworth* v. *Secretary of the Commonwealth, supra,* with *Prescott* v. *Secretary of the Commonwealth, supra* at 203-204.

In the present case, we have little difficulty concluding that the Governor's declaration must be honored. By its own terms, the Governor's statement, recapitulating the Act's over-all objective and finding that the public interest would be served by prompt implementation, was adequate to set forth the facts constituting the emergency. In these respects, the declaration was equivalent to the one upheld in *Mirageas* v. *Massachusetts Bay Transp. Authy., supra,* which stated only that "[i]t is in the public interest that the provisions of this Act be effective immediately in order that the two percent interest increase may be of benefit to the parties in certain actions of law."

The declaration's validity is even more apparent when we look beyond its "bare terms" and consider it, as we may, by reference to the body of the Act. See *Molesworth* v. *Secretary of Commonwealth, supra* at 59; *Marshal House, Inc.* v. *Rent Control Bd. of Brookline, supra,* citing *Russell* v. *Treasurer & Recr. Gen., supra* at 504. See also *Prescott* v. *Secretary of the Commonwealth, supra.* The Act is comprised of a number of sections, all of which pertain to the effective administration of juvenile justice. It can readily be inferred from § 5 of the Act that one of its objectives was to correct the sentencing anomaly that resulted from the 1991 amendment of G. L. c. 119, § 72. The prompt rectification of that anomaly was a plausible rationale for making the Act effective immediately.

For the foregoing reasons, the motion judge correctly entered a judgment declaring that the Act was lawfully enacted on an emergency basis and that Andrew was not entitled to an award of any statutory or earned good time credits.[3]

*Judgment affirmed.*

*Joseph S. Berman* for the plaintiff.

*James J. Arguin,* Assistant Attorney General, for Commissioner of Correction.

---

[3]Because we decide the case on this basis, we need not consider the commissioner's alternative rationale for applying the Act to Andrew, namely that the Act fell within the powers of the courts exception to the referendum process, such that it became effective thirty days after its approval. See generally *Vittands* v. *Sudduth, supra* at 518-519.

